Marva Y. GLENN and Wanda
Y. Dickens, Plaintiffs,

v.

Anthony WILLIAMS, et al., Defendants.

Civil Action No. 98–1278 (CKK/JMF).

United States District Court,
District of Columbia.

Sept. 3, 2002.

David A. Super, Samuel J. Waldon, James F.H. Scott, E. Barrett Atwood, IV, Baker Botts, LLP, Wanda Y. Dickens, Washington, DC, for Plaintiffs.

William Randolph Morel, Maria Claudia Amato, George C. Valentine, Daniel A. Rezneck, Scott Michael Leighton, George Edwin Rickman, Jacques Philippe Lerner, Washington, DC, for Defendants.

## MEMORANDUM OPINION

FACCIOLA, United States Magistrate Judge.

This Title VII case is before me for discovery pursuant to LCvR 72.2. I herein resolve *Plaintiffs' Motion to Compel* ("Plains.Mot.").

## BACKGROUND

Plaintiffs Marva Y. Glenn ("Glenn") and Wanda Y. Dickens ("Dickens") both worked for many years in the District of Columbia Department of Consumer and Regulatory Affairs ("Department") until their resignations in 1997. Glenn joined the Department in 1969 and was an inspections supervisor in the Housing Regulations Division ("Division") from 1984 through 1997. She claims that she was responsible for inspections in some of the most depressed and dangerous wards in the District.

Glenn filed complaints against the Department with the Equal Employment Opportunity Commission ("EEOC") in 1989 and 1990. Both complaints resulted in administrative settlement agreements. Even after these agreements were reached, however, Glenn complained of being overworked and understaffed, especially given the housing conditions in her wards. Amended Complaint ("Am.Compl.") ¶ 13. She further contends that less challenging wards were assigned to male supervisors. Am. Compl. ¶ 14. In addition, she claims that she was denied the additional training that was promised under the settlement agreements. Am. Compl. ¶ 15. Finally, Glenn asserts that the Division retaliated against her by lowering her performance evaluations and denying her any promotions. Am. Compl. ¶ 17.

Dickens began working for the Department in 1975 and held various positions during the course of her employment. Throughout her tenure, she complained of various discriminatory acts and brought two actions: (1) an EEOC complaint in 1976, and (2) a court complaint in 1983. A 1985 Consent Decree ordered the Department to pay $50,000 for paralegal training and to refrain from any future discriminatory actions. Am. Compl. ¶ 26. Dickens claims that the Department paid for two training courses but refused to pay for any additional classes, thus preventing her from receiving certification. Am. Compl. ¶ 27. She also claims that the Department continued to engage in discriminatory acts such as detailing her to other positions, assigning her higher job responsibilities without any promotion or pay increase, refusing to promote her, improperly placing her on "absent without official leave" status, placing her on the "reduction-in-force" list, and encouraging other employees to discriminate against her. Am. Compl. ¶ 29.

In 1997, the District of Columbia Financial Responsibility and Management Assistance Authority ("Control Board") assumed governance of much of the District's administration, including the Department. In August 1997, the Control Board issued a directive to department heads, authorizing them to terminate unneeded employees without the ordinary procedural hurdles. Plaintiffs were informed of these new rules that effectively made them "at will" employees. In light of these events, Glenn and Dickens resigned, rather than risk termination. Am. Compl. ¶ 22.

Plaintiffs brought this action in May 1998. After resolving outstanding service of pro-

cess issues, plaintiffs began discovery in earnest in 2001. Defendants have filed a motion for summary judgment, but Judge Kollar-Kotelly has allowed plaintiffs to await the outcome of the present discovery dispute before filing their opposition.

## DISCUSSION

Plaintiffs move to compel production of the following three categories of information: (1) documents relating to promotions of Department personnel, (2) documents relating to the assignment of Department employees to other positions, and (3) document relating to Department-wide hiring and promotion freezes. Plains. Mot. at 3.

Defendants object primarily on the grounds that the requests are unduly burdensome and overly broad. They assert that the Department does not maintain documents on assignments or promotions, and that in order to retrieve this information they would have to review over 1,000 personnel files from the years 1987 through 1997.

In their opposition, defendants emphasize the distinction between "disparate impact" and "disparate treatment" theories, insisting that plaintiffs have asserted only the latter. The distinction is worth noting. A "disparate treatment" claim is an individual complaint of discrimination, whereas a "disparate impact" claim implies victimization due to discriminatory policies. Here, the complaint appears to advance individual acts of discrimination committed solely against the plaintiffs.

■ It has been established that comparative information concerning an employer's treatment of individuals is relevant evidence in an individual discrimination claim. Such evidence may be used to construct a *prima facie* case of discrimination. *See Minority Employees at NASA (MEAN) v. Beggs,* 723 F.2d 958, 962 (D.C.Cir.1983). Yet, as with so many discovery disputes in Title VII cases, this one boils down to the appropriate scope of production of information pertaining to non-party employees at the plaintiffs' workplace. I have dealt with this very issue in the recent case of *Pleasants v. Allbaugh,* 208 F.R.D. 7, 12–13 (D.D.C.2002), in the context

of other complaints of discrimination. *See also Mitchell v. National R.R. Passenger Corp.,* 208 F.R.D. 455, 460 (D.D.C.2002)("[O]ther claims of discrimination against a defendant are discoverable if limited to the same form of discrimination, limited to the same department or agency where plaintiff worked, and limited to a reasonable time before and after the discrimination complained of"). In addition, in *Childers v. Slater,* No. 97–853, 1998 WL 429849 (D.D.C.1998), I wrote the following:

[S]eeking information about all discrimination actions filed against an entire agency sweeps too broadly. Such a request involves cases which have nothing to do with plaintiff's division or branch or the supervisors she accuses of discriminatory conduct and which are, therefore, irrelevant to plaintiff's action. However, to the extent that plaintiff seeks information to make her case that there was a persistent "pattern of discrimination" *within her division,* that discovery will be permitted to the extent it is relevant to the allegations in her complaint.

*Id.* at *4.

■ In the case at bar, plaintiffs' discovery request seeks production of all documents within the Department relating to promotions and hiring freezes from 1987–1997. As I stated in *White v. U.S. Catholic Conference,* No. 97–1253, 1998 WL 429842 at *4 (D.D.C.1998), not only must there be a "temporal limitation," but also a "geographic limitation" on the documents requested. Necessarily, the geographic limitation is the "employing unit." However, as our circuit has not clearly defined "employing unit," we seek guidance from our sister circuits. Review of the caselaw in these circuits clearly demonstrates that discovery in Title VII actions may appropriately be limited to employment units, departments, and sections in which there are employees who are similarly situated to the plaintiff. *See Earley v. Champion International Corp.,* 907 F.2d 1077 (11th Cir.1990)(limiting discovery in Title VII cases to employing unit); *James v. Newspaper Agency Corp.,* 591 F.2d 579 (10th Cir.1979)(limiting discovery in gender discrimination case to plaintiff's department);

*Haselhorst v. Wal–Mart Stores, Inc.,* 163 F.R.D. 10 (D.Kan.1995)(discovery limited to employing unit); *Rodger v. Electronic Data Systems,* 155 F.R.D. 537 (E.D.N.C.1994)(appropriate scope of discovery in age discrimination case was relevant operations division); *Obiajulu v. City of Rochester, Dep't of Law,* 166 F.R.D. 293 (W.D.N.Y.1996)(limiting discovery to specifically classified employees within the department). For the production of documents beyond the employing unit or work unit, the plaintiffs must show a more particularized need and relevance. *See Haselhorst v. Wal–Mart, Inc.,* 163 F.R.D. at 11.

■ It appears relatively easy to find the appropriate unit for Glenn, as she worked exclusively in the Housing Regulations Division for the duration of the relevant period. Dickens, however, is another matter, for the complaint states that she held a variety of positions and does not specify which of those she held from 1987 through 1997. Accordingly, I will order Ms. Dickens to specify those divisions she worked for during the time period between 1994 and 1997.

■ Plaintiffs' request must also be reasonably limited in time. *Childers v. Slater,* No. 97–853, 1998 WL 429849 at *4 (D.D.C. 1998). *See also Robbins v. Camden Bd. of Educ.,* 105 F.R.D. 49, 61–63 (D.N.J.1985)(proper scope of discovery seeking other complaints of discrimination against defendants are limited in time, type of action complained of or type of discrimination alleged). Although acts occurring before the relevant statute of limitations period may still be admissible to prove a plaintiff's timely claim, the request must be reasonably limited. Courts may exercise discretion in discrimination cases by placing reasonable limits on the time periods for which discovery must be produced. *Obiajulu v. City of Rochester, Dep't of Law,* 166 F.R.D. at 296. *See e.g. Miles v. Boeing Co.,* 154 F.R.D. 117, 120 (E.D.Pa.1994)(discovery allowed for a period of two years from date of alleged discrimination). For example, discovery of other discriminatory acts must be related in time in order to establish the inference of similar motivation. *See Johnson v. The Washington Times, et al.,* 208 F.R.D. 16, 19 (D.D.C.2002). As I stated in *Johnson,* "[s]imilar acts may be admissible as bearing on the motive with which the organization acted when confronted with a similar situation as similar acts would be admissible if performed with the same intent by an individual." *Id.*

■ Here, plaintiffs seek documents relating to all other employees in the Department over a 10–year period. Ten years is an inordinate length of time to support plaintiffs' pattern of discrimination theory. Neither Glenn nor Dickens, as it appears from the face of the complaint, were employed in the same division at the Department or supervised by the same agent. In relation to both plaintiffs' allegation of discrimination, 1997 seems to be the most determinative time period. Thus, in order to establish a pattern of discrimination, three years is a reasonable time in which to allow discovery.

■ Defendants also raised privacy issues in their answers to plaintiffs' interrogatories, but these do not figure prominently in their opposition. The parties already agreed to a protective order covering the initial release of 25 personnel files to plaintiffs. The parties shall be required to extend the scope of this order to cover any more files that are produced. In light of such a protective order, I find any remaining privacy concerns negligible. *See Pleasants v. Allbaugh,* 208 F.R.D. 7 (D.D.C.2002); *Wainwright v. WMATA,* 163 F.R.D. 391, 397 (D.D.C.1995). In addition, defendants have indicated their willingness to produce any documents relating to hiring or promotion freezes, and I shall order them to do so.

An order accompanies this Memorandum Opinion.

### ORDER

This matter is now before me for the resolution of discovery disputes and all dispositive motions. On April 10, 2002, I heard oral arguments on plaintiffs' motion to compel. Plaintiffs' motion to compel was stayed on April 26, 2002, pending decision by the Supreme Court in *Morgan v. National R.R. Passenger Corp.,* 232 F.3d 1008 (9th Cir. 2000). On June 10, 2002, the Supreme Court issued its decision in *National R.R. Passen-*

*ger Corp. v. Morgan,* —— U.S. ——, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). It is, therefore, hereby,

**ORDERED** that the stay is dissolved.

Pursuant to the accompanying Memorandum Opinion, it is also, hereby,

**ORDERED** that counsel for defendants produce: (1) documents relating to promotions of Department personnel, (2) documents relating to the assignment of Department employees to other positions, and (3) documents relating to Department-wide hiring and promotion freezes. In the case of Glenn, those documents shall be limited to the Housing Regulations Division for the time period between 1994 and 1997. As to Dickens, I order the plaintiff to specify by September 20, 2002, those divisions she worked for during the time period between 1994 and 1997. Documents from the Housing Regulations Division must be produced within 30 days from the date of this Order. Documents relating to Dickens must be produced 30 days from the time she specifies the divisions in which she worked.

Furthermore, pursuant to Judge Kollar-Kotelly's order dated December 17, 2001, plaintiffs shall file their opposition memorandum 21 days after plaintiffs have obtained any and all documents that defendant has been ordered to produce. The defendants must file their reply memorandum 14 days thereafter.

Finally, it is, hereby, **ORDERED** that *Plaintiff's Motion to Compel* [# 113] is **GRANTED** in part and **DENIED** in part.

**SO ORDERED.**