Agapito SÁNCHEZ–MEDINA, et al., Plaintiffs

v.

UNICCO SERVICE COMPANY, et al, Defendants.

Civil No. 07–1880 (DRD).

United States District Court, D. Puerto Rico.

Feb. 8, 2010.

**30**

Anibal Escanellas–Rivera, Maria T. Juan–Urrutia, Escanellas & Juan, San Juan, PR, for Plaintiffs.

Elizabeth M. Lizardi–Mendez, Francisco M. Ramirez–Rivera, Martinez Odell & Calabria, Anita Montaner–Sevillano, Karen Morales–Ramirez, McConnell Valdes, Enrique M. Almeida–Bernal, Almeida Law Office, San Juan, PR, for Defendants.

*OPINION AND ORDER*

JUSTO ARENAS, United States Chief Magistrate Judge.

This matter is before the court on motion for reconsideration filed by the co-defendant, UNICCO Service Company, on December 10, 2009. (Docket No. 69.) Plaintiffs filed a motion in opposition on January 19, 2010. (Docket No. 80.) For the reasons set forth below, the co-defendant's motion is hereby DENIED.

## I. BACKGROUND

Plaintiffs' causes of action were brought under the Age Discrimination and Employment Act ("ADEA"), Title VII of the Civil Rights Act 42 U.S.C. § 2000e *et seq.*, and under various Puerto Rico statutes, seeking redress from the defendants, UNICCO Service Company ("UNICCO"), Unilever de Puerto Rico, Inc., ("Unilever"), William Ocasio, and Juan C. Rodríguez, for conduct in the workplace constituting of sexual harassment, employment discrimination by reason of age, sex and gender, retaliation for engaging in a protected activity, for slandering Agapito Sánchez–Medina ("Mr. Sánchez") and torts. (Docket No. 16, at 1, ¶ 1.)

On May 6, 2009 "Plaintiffs' Supplemental Set of Interrogatories" was sent to the co-defendant. (Docket No. 69–3.) On July 21, 2009, the co-defendant received notice of "Plaintiffs' First Request to Admit Facts." (Docket No. 69–4.) On August 4, 2009, the co-defendant notified its "Answer to Plaintiffs' Supplemental Set of Interrogatories." (Docket No. 69–5.) On August 6, 2009, plaintiffs made several objections to the co-defendant's "Answer to Plaintiff's Supplemental Set of Interrogatories." (Docket No. 69–6.) According to plaintiffs some of the interrogatories that were answered were unresponsive

because the co-defendant did not produce the information requested in them. (*Id.*) On August 19, 2009, the co-defendant responded to the objections made by plaintiffs. (Docket No. 69–8.) On August 21, 2009, the co-defendant notified its "Answer to Plaintiffs' First Request to Admit Facts." (Docket No. 69–9.) On September 1, 2009, plaintiffs made an additional objection to the co-defendant's "Answer to Plaintiffs' Supplemental Set of Interrogatories." (Docket No. 69–10.) On September 3, 2009, the co-defendant responded to plaintiffs' objection. (Docket No. 69–11.)

On October 19, 2009, after failing to reach an agreement over the discovery dispute plaintiffs and the co-defendant jointly reached the law clerk assigned to this case. (Docket No. 45, at 2 & Docket No. 69, at 4, ¶ 2.) The parties were directed to submit position letters on the matter. The parties submitted their letters.

In their position letter plaintiffs claimed that the co-defendant failed to:

(1) Identify the managerial and supervisory positions that were available at Puerto Rico, before and after plaintiff's termination, and the name, age, and seniority of the persons occupying the same.

(2) Provide a list with the names, position, age, and seniority of UNICCO's employees at Puerto Rico, before and after plaintiff's termination.

(3) Provide a list with the names, age, seniority and position of its employees that worked at UNILEVER, and were reassigned to another facility as an alternative to their termination, after plaintiff's termination.

(4) Provide a list with the name, age, position and seniority of defendant's employees occupying a supervisory or managerial position, at UNICCO's operations in the United States.

(Docket No. 66, at 3.)

Plaintiffs argued that the information requested was relevant because UNICCO had a practice and policy for relocating employees that were going to be affected due to termination of a contract and/or due to a

reduction in force, to any other positions occupied by an employee with lesser seniority. (*Id.* at 4, ¶ 1.) According to plaintiffs, after being terminated from his employment Mr. Sánchez informed UNICCO that he was willing to accept any other position at any other facility in Puerto Rico or in the United States but was informed that no positions were available for him. (*Id.*) Despite of this plaintiffs claimed that UNICCO made various relocation offers to other younger employees who had less experience and seniority. Plaintiffs also claimed that Radamés Rivera ("Mr. Rivera") received an e-mail from a human resources representative of UNICCO asking him for resumes from UNICCO employees. (*Id.*)

The co-defendant in turn argued that on October 1, 2009, it communicated to plaintiffs that it did not understand the relevance of the request for information related to supervisory positions UNICCO may have had outside of Puerto Rico, since UNICCO did not have a transfer policy for employees that are laid off as a result of the contractual relationship between UNICCO and its clients. (*Id.* at 5, ¶ 1.) Plaintiffs were also told by the co-defendant that Act 80 does not provide bumping rights for employees that cease in a position as a result of cessation of operations. (*Id.* at 9, ¶ 1.) As for the e-mail that allegedly was sent to Mr. Rivera, the co-defendant claimed that despite its numerous requests it was never produced by plaintiffs. (*Id.* at 5, ¶ 1.)

After analyzing the arguments made by the parties I issued an "Opinion and Order" on November 30, 2009, whereby the co-defendant was directed to:

(1) Identify the managerial and supervisory positions that were available at Puerto Rico, before and after plaintiff's termination, and the name, age, and seniority of the persons occupying the same before and after plaintiff's termination.

(2) Provide a list with the names, age, seniority, and position of its employees that worked at Unilever, and were reassigned to another facility as an alternative to their termination, after plaintiff's termination.

(3) Provide a list with the name, age, position and seniority of defendant's employees occupying a supervisory or managerial position, at UNICCO's operations in the United States.

(Docket No. 66, at 11–12.)

In addition, I ordered plaintiffs to produce any e-mail or communication, in their possession, from UNICCO's HR representatives which might make reference to available positions in other UNICCO accounts in the United States. (*Id.* at 12.)

On December 10, 2009, the co-defendant filed a "Motion for Reconsideration." (Docket No. 69.) Therein, the co-defendant requests the court to reconsider the "Opinion and Order" because: (1) the information sought by plaintiffs and ordered by the court to be produced has already been provided; (2) the discovery ordered by the court is broader than the discovery requested by plaintiffs; (3) plaintiffs have alleged in their "Complaint" or "Amended Complaint" neither a pattern and/or practice of discrimination on the part of UNICCO nor a failure to rehire or relocate. (*Id.* at 6–7, ¶ 3.)

On January 13, 2010, plaintiffs filed a "Motion in Compliance with Opinion and Order." (Docket No. 78.) Plaintiffs state that the documents they were ordered to be produced were sent to the co-defendant. (*Id.* at 1, ¶ 1.) On January 14, 2010, the co-defendant filed a response in "Opposition to Plaintiffs' Motion in Compliance with Opinion and Order." (Docket No. 79.) The co-defendant argues that plaintiffs failed to comply with the court's "Opinion and Order" and requests that plaintiffs be sanctioned. (*Id.* at 4, ¶ 2.) Finally, on January 19, 2009, plaintiffs filed a response in "Opposition to UNICCO's Motion for Reconsideration." (Docket No. 80.) Plaintiffs contend that the co-defendant's arguments are not only incorrect, but are also false, and contrary to the documentary evidence produced by plaintiffs. (*Id.* at 1, ¶ 2.)

## II. ANALYSIS

### A. Motion for Reconsideration

"The Federal Rules of Civil Procedure do not specifically provide for the filing of motions for reconsideration." *Silva Rivera v. State Ins. Fund Corp.*, 488 F.Supp.2d 72, 77 (D.P.R.2007) (citing *Sierra Club v. Tri–State Generation & Transmission Ass'n, Inc.*, 173 F.R.D. 275, 287 (D.Colo.1997); *Hatfield v. Bd. of County Comm'rs for Converse County*, 52 F.3d 858, 861 (10th Cir.1995)). "Notwithstanding, any motion seeking the reconsideration of a judgment or order is considered as a motion to alter or amend judgment under Fed.R.Civ.P. 59(e) if it seeks to change the order or judgment issued." *Villanueva–Méndez v. Nieves Vázquez*, 360 F.Supp.2d 320, 323 (D.P.R.2005) (citing *Hatfield v. Bd. of County Comm'rs for Converse County*, 52 F.3d at 861).

The co-defendant has fashioned its motion for reconsideration as one under Rule 59(e). Generally, "Rule 59(e)'s legal standards will be applied to motions for reconsideration of interlocutory orders." *Villanueva–Méndez v. Nieves Vázquez*, 360 F.Supp.2d at 323 (citations omitted). However, "[t]he First Circuit has said that Rule 59(e) . . . does not apply 'to motion for reconsideration of interlocutory orders from which no immediate appeal may be taken.' " *Golf Tech, LLC v. Edens Tech., LLC*, 610 F.Supp.2d 106, 109 (D.Me.2009) (quoting *Nieves–Luciano v. Hernández–Torres*, 397 F.3d 1, 4 (1st Cir. 2005)). "A discovery order, [such as the one issued in this case], is . . . an interlocutory order in the course of proceedings [that] is not appealable." 8 The Late Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2006 (2d ed.) Therefore, the co-defendant's motion cannot be treated as one under Rule 59(e). This means then that "the decision as to whether or not to reconsider . . . falls squarely within the plenary power of the court that issued the initial ruling, this court." *Portugués–Santa v. B. Fernández Hermanos, Inc.*, 614 F.Supp.2d 221, 226 (D.P.R.2009) (deciding to "exercise [the court's] discretion in favor of entertaining the motion for reconsideration") (citing *Campos v. P.R. Sun Oil Co.*, 536 F.2d 970, 972 n. 6 (1st Cir.1976)).

■ A motion for reconsideration "cannot be used [neither] 'to raise arguments which could have been raised prior to the issuance of the judgment [or order]' ", *Vega v. Her-*

*nández*, 381 F.Supp.2d 31, 35 (D.P.R.2005) (quoting *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir.1998)), nor for "repeat[ing] old arguments previously considered and rejected." *Vega v. Hernández*, 381 F.Supp.2d at 35 (quoting *Trabal–Hernández v. Sealand Servs., Inc.*, 230 F.Supp.2d 258, 259 (D.P.R.2002) (citing *Nat'l Metal Finishing Co. v. BarcalysAm./Comercial, Inc.*, 899 F.2d at 123; *Gueits–Colón v. Fraticelli–Viera*, 181 F.Supp.2d 48, 49 (D.P.R.2002))). "A district court may, however, grant a party's motion for reconsideration in any of three situations: (1) the availability of new evidence not previously available, (2) an intervening change in controlling law, or (3) the need to correct a clear error of law or to prevent manifest injustice." *Sánchez Rodríguez v. Departamento de Corrección y Rehabilitación*, 537 F.Supp.2d 295, 297 (D.P.R. 2008) (citing *Dodge v. Susquehanna Univ.*, 796 F.Supp. 829, 830 (M.D.Pa.1992)).

The co-defendant states three reasons why the court should reconsider its "Opinion and Order." First, the co-defendant claims that the information which the court ordered to be produced regarding the names, age, seniority, and positions of the employees that worked at Unilever and were reassigned to another facility as an alternative to their termination after Mr. Sánchez' termination, was produced on multiple occasions. (Docket No. 69, at 7.) According to the co-defendant the information was first produced when it

answered interrogatory number 4 of "Plaintiffs Supplemental Set of Interrogatories." (Docket No. 69–5, at 3.) The co-defendant states that in its answer to the interrogatory it provided the name, rehire date, date of birth, age, location and status or position of the employees that worked at the Unilever plant, were affected by the termination of the service agreement between UNICCO and Unilever, and found seasonal temporary work at other UNICCO facilities. (Docket No. 69, at 7–8, ¶ 5.) Interrogatory number 4 reads as follows:

> State and describe whether UNICCO offered any employment alternatives to any of its employees that worked at Unilever and/or Chesseborough Ponds in any of its clients and/or accounts, that were affected by the termination of the service agreement between UNICCO and Unilever and/or Chesseborough Ponds. For each of these employees which UNICCO offered an employment, state the name, age, seniority, place of assignment, and starting date.

(Docket No. 69–3, at 4, ¶ 4.)

The co-defendant's answer to interrogatory number 4 reads as follows:

> Several employees found seasonal/temporary work at other UNICCO facilities on their own and to assist during some plant shutdowns. These positions were Janitorial/Utility (painting) type positions.

| | Rehired | DOB | AGE | Location | Status/Position |
|---|---|---|---|---|---|
| Luis Andino | 2/07/08 | 9/29/81 | 27 | Wyeth | Temp/Janitorial/Utility Work |
| Rafael Villafañe | 12/21/07 | 12/18/57 | 50 | Bard & Wyeth | Temp/Janitorial/Utility Work |
| Benjamín Ortiz | 12/21/07 | 11/23/62 | 45 | Bard | Temp/Janitorial/Utility Work |
| Antonio Martínez | 1/02/08 | 5/23/71 | 37 | Bard & Wyeth | Temp/Janitorial/Utility Work |
| José Rosario | 12/21/07 | 10/04/69 | 48 | Bard | Temp/Janitorial/Utility Work |

(Docket No. 69–5, at 3.)

The second time that according to the co-defendant the information was produced was when it answered interrogatory number 7 of "Plaintiffs' Supplemental Set of Interrogatories." (Docket No. 69, at 8, ¶ 2.) Interrogatory number 7 reads as follows:

> State whether UNICCO has offered to any of its employees that were assigned to Chesseborough Ponds, any type of employment offer, or any type of employment contract, to provide any type of service, in any position, in any other company to which UNICCO provide services to. State for each of these employees, the name, and

age of the employee, as well as the date in which the employment offer was made, and the place to which UNICCO assigned the employee. Provide copies of any and all documents that sustain your answers.

(Docket No. 69–3, at 5, ¶ 7.)

UNICCO's answer to interrogatory number 7 reads as follows:

As stated above, laid-off employees from Unilever sought out other positions within UNICCO themselves. Several found temporary/seasonal work immediately after the UNICCO contract ended with Unilever. These positions were mainly porter, janitorial, or utility (painting) type of work. Employees were hired on a temporary basis to perform work during shutdown of seasonal type work.

(Docket No. 69–5, at 4.)

The co-defendant states that on August 6, 2009, plaintiffs objected some of the answers to the supplemental set of interrogatories, including interrogatories numbers 4 and 7. (Docket No. 69, at 8, ¶ 3.) Plaintiffs' objection to interrogatory number 4 reads as follows:

As for your answer, describe the working shift and working schedule of these employees, and/or describe with specificity the term "Temp", as it was used in your supplemental answer, and state also if these employees worked full time or on a pert time basis.

(Docket No. 69–6, at 1.)

The co-defendant claims that the information that plaintiffs sought was produced even though it was not requested in the original interrogatory. (Docket No. 69, at 9, ¶ 2.) The co-defendant answered the following:

The work shift of these employees covered from 7:00 AM until 3:30 PM. Nonetheless, these hours could vary, depending on the customer and its needs. In regards to the definition of the word "temp", it refers to a temporary employment for a fixed period of time.

(Docket No. 69–8, at 1.)

Plaintiffs however objected to the co-defendant's answer to interrogatory number 7. (Docket No. 69, at 9, ¶ 3.) Plaintiffs objection reads as follows:

Your answer is not responsive, since you have failed to explain the meaning, specifically the terms and condition of employment, and whether these were on a full or part time basis, of the term "temporary/seasonal work". In addition, you failed to specifically describe the specific position offered. State whether the employees re-hired by Unicco mentioned in your answer to interrogatory 4, work on a full or a part time basis, and also state whether these employees have continued working for Unicco. State if these employees are no longer working for Unicco, the last day of employment at Unicco, and the reasons as for which each of these employees is no longer working for Unicco.

(Docket No. 69–6, at 2.)

The co-defendant claims that plaintiffs again were asking for information that was not requested in the original interrogatory. (Docket No. 69, at 9, ¶ 4.) The co-defendant states that despite of this the information was provided to plaintiffs. (*Id.*) The co-defendant's answer to plaintiffs' objection reads as follows:

**Luis Andino**—Mr. Luis Andino was laid-off from UNICCO at the Unilever account; he sought employment at other UNICCO facilities and was hired to work at Wyeth on 1/21/08 as a temporary employee to assist in janitorial/utility operations in a part-time basis. Mr. Andino was terminated in 04/16/2009.

**Rafael Villafañe**—Mr. Rafael Villafañe was laid-off from UNICCO at the Unilever account; he sought employment at other UNICCO facilities and was hired to work at Bard Shannon on 12/21/07 and Wyeth on 02/07/08 as a temporary employee to assist in janitorial/utility operations. Mr. Villafañe was terminated on 02/06/2009.

**Benjamín Ortiz**—Mr. Benjamín Ortiz was laid-off from UNICCO at the Unilever account; he sought employment at other UNICCO facilities and was hired to work at Bard Shannon on 12/20/07 as a temporary employee to assist in janitorial/utility operations on a part-time basis. Mr. Ortiz was terminated on 02/01/08.

**Antonio Martínez**—Mr. Antonio Martínez was laid-off from UNICCO at the Unilever account; he sought employment at other UNICCO facilities and was hired to work at Bard Shannon on 12/27/07 and Wyeth on 03/07/2008 as a temporary employee to assist in janitorial/utility operations. On 06/30/08, Mr. Martínez was transferred to Bard Shannon. Mr. Martínez is still working at Bard Shannon.

**José Rosario**—Mr. José Rosario was laid-off from UNICCO at the Unilever account; he sought employment at other UNICCO facilities and was hired to work at Bard Shannon on 12/20/07 as a temporary employee to assist in janitorial/utility operations on a part-time basis. Mr. Rosario is still working at Bard Shannon.

(Docket No. 69-8, at 2.)

Also according to the co-defendant in the first request to admit facts, plaintiffs sought out additional information about Luis Andino, Rafael Villafañe, Benjamín Ortiz, Antonio Martínez, José Rosario, and Samuel Martínez. (Docket No. 69, at 10, ¶ 1.) The co-defendant sustains that in its answer to plaintiffs' discovery requests it stated that these employees found seasonal/temporary work at other facilities on their own. (*Id.*) The co-defendant also sustains that these employees worked for UNICCO at the Unilever account and after the cessation of the contract searched for other positions within UNICCO in other accounts. (*Id.* at 10–11, ¶ 2.) According to the co-defendant these employees were never relocated or reassigned in any way. (*Id.*)

The co-defendant's argument was not challenged by plaintiffs. However, the co-defendant did not provide any information regarding Samuel Martínez. Also, as for the employees that no longer worked for UNICCO, specifically Luis Andino, Rafael Villafañe and Benjamín Ortiz, the co-defendant failed to state the reasons for their termination. However, regardless of whether or not the information was produced, the co-defendant did not state any reason why the court must reconsider its "Opinion and Order." The co-defendant's argument is thus unavailing since it merely shows that it has produced certain information requested by plaintiffs.

The second reason the co-defendant believes the court has to reconsider its "Opinion and Order" is because the discovery ordered was broader than the discovery requested by plaintiffs. (Docket No. 69, at 12.) The co-defendant argues that even though plaintiffs' request for documentation and/or information had always been limited to supervisory positions that were available at UNICCO accounts in Puerto Rico and the United States, it was ordered to produce information regarding managerial positions. The co-defendant states that plaintiffs never requested information or documentation of employees occupying managerial positions. (*Id.* at 12–13.) The co-defendant makes reference to interrogatory number 8 of "Plaintiffs' Supplemental Set of Interrogatories" which reads as follows:

> State and describe any and all positions available within defendants' organization, which the plaintiff could have occupied as an alternative to his termination. State ands describe in detail, which of these positions were offered to the plaintiff. If the defendants did not offered any of these positions to the plaintiff, state each and every reason why it was not offered to the plaintiff. Provide copies of any and all documents that sustain your answers.

(Docket No. 69-3, at 5.)

The co-defendant however objected to this request in its "Answer to Plaintiffs' Supplemental Set of Interrogatories" because it was overly broad and it could not account for other position at other UNICCO accounts. (Docket No. 69, at 13, ¶ 2 & Docket No. 69-5, at 5.) Plaintiffs responded to the co-defendant's answer by stating that it was not responsive because they had "requested information regarding all the positions available at U[NICCO] that [Mr. Sánchez] could have occupied as an alternative to his termination." (Docket No. 69, at 13, ¶ 2 & Docket No. 69-6, at 2.) Plaintiffs also stated that UNICCO "failed to provide any information whatsoever, nor any available positions, nor any position that could have been occupied by the [Mr. Sánchez]...." (*Id.*) The co-defendant replied by stating that there were

no supervisory positions available in any other UNICCO account in Puerto Rico at the time of the cease of the contractual relationship between UNICCO and Unilever. (Docket No. 69, at 13, ¶ 3 & Docket No. 69–8, at 2.) Plaintiffs responded by stating that the co-defendant had only provided information regarding the supervisory positions available at UNICCO accounts in Puerto Rico and had failed to produce "information regarding any and all supervisory positions available at the UNICCO's accounts, not only in Puerto Rico, but also in the United States." (Docket No. 69, at 13–14, ¶ 3 (emphasis omitted) & Docket No. 69–10.) Plaintiffs' request was objected to by the co-defendant. (Docket No. 69, at 14, ¶ 1 & Docket No. 69–11.) According to the co-defendant plaintiffs' request for information has always been limited to supervisory positions that were available at UNICCO accounts in Puerto Rico and the United States, and that there was never any mention of documentation and/or information related to managerial positions. (Docket No. 69, at 14, ¶ 1.)

Plaintiffs however argue that the allegations made by the co-defendant are incorrect. (Docket No. 80, at 4, ¶ 1.) According to plaintiffs, supervisory and managerial positions in the discovery process are similar terms, and one term, either supervisory or managerial, encompasses and/or includes the other, not vice versa. Plaintiffs thus contend that the order issued by the court was reasonable and within the scope of plaintiffs' discovery request. (*Id.*) Plaintiffs also sustain that the "Opinion and Order" is reasonable because the co-defendant alleged that Mr. Sánchez' equivalent job position and/or title in its operations in the United Sates was different than in Puerto Rico, "Business Professional 2," which can be either a supervisory or a managerial position within UNICCO's operation. (*Id.*)

The co-defendant's second argument is equally unavailing since it simply raises a point of disagreement. *See Waye v. First Citizen's Nat'l Bank*, 846 F.Supp. 310, 314 n. 3 (M.D.Pa.1994) (quoting *Atkins v. Marathon LeTourneau Co.*, 130 F.R.D. 625, 626 (S.D.Miss.1990)). Also, as plaintiffs point out

the co-defendant did not establish the difference, if any, between supervisory and managerial positions. Therefore, the discovery ordered by the court is by no means broader than the discovery requested by plaintiffs.

The third reason the co-defendant believes the court has to reconsider its "Opinion and Order" is because plaintiffs alleged in their "Complaint" or "Amended Complaint" neither a pattern or practice of discrimination on the part of UNICCO nor a failure to rehire or relocate. (Docket No. 69, at 6–7, ¶ 2.) The co-defendant contends that discovery in this case has to be limited to the allegations that were made by plaintiffs. (*Id.* at 18, ¶ 2.) Also, according to the co-defendant plaintiffs never set forth sufficient allegations as to the relevance of the discovery requested. (*Id.* at 15, ¶ 1.) The co-defendant claims that it was with the "Opinion and Order" that it gained knowledge that plaintiffs were seeking information about general company practices in order to demonstrate a pattern of discriminatory conduct. (*Id.*) Plaintiffs in turn argue that the allegations made by the co-defendant are incorrect because in the "Initial Scheduling Conference Memorandum" they alleged that UNICCO had a practice and policy of relocation, and that younger employees were relocated and treated far more better than Mr. Sánchez who was terminated. (Docket No. 80, at 3, ¶ 2 & Docket No. 44, at 8–9.)

In *Klonoski* the First Circuit noted that in the context of a discovery request relevance was not determined solely by reference to the allegations of the pleadings. *Klonoski v. Mahlab*, 156 F.3d 255, 267 (1st Cir.1998) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978)). In other words this meant that discovery itself was not limited to the issues raised by the pleadings. *R.W. Int'l Corp. v. Welch Foods, Inc.*, 129 F.R.D. 25, 29 (D.P.R.1990) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. at 351, 98 S.Ct. 2380). However, the relevance standard was changed with an amendment to Federal Rule of Civil Procedure 26(b)(1).

"Rule 26(b)(1) was amended to distinguish between discovery regarding matters that are relevant to a party's claim or defense and

discovery of a broader scope encompassing 'any matter relevant to the subject matter involved in the action.'" *In re Subpoena to Witzel,* 531 F.3d 113, 118 (1st Cir.2008) (quoting Fed.R.Civ.P. 26 advisory committee notes (2000 amend.)). "Therefore, when an objection arises as to the relevance of discovery, 'the court [will] become involved to determine whether the discovery is relevant to the claims or defenses and, if not, whether good cause exists for authorizing it, so long as it is relevant to the subject matter of the action.'" *Id. See Remexcel Managerial Consultants, Inc. v. Arlequín,* 583 F.3d 45, 51 (1st Cir. 2009) (quoting *Heidelberg Ams., Inc. v. Tokyo Kikai Seisakusho, Ltd.,* 333 F.3d 38, 41 (1st Cir.2003)). This means that a party may seek information that even though it might not be related to the issues raised by the pleadings it can nevertheless be relevant if it is related in any way to the subject matter involved in the action. However, the party who seeks the information is "required to show good cause to support the request." *In re Subpoena to Witzel,* 531 F.3d at 118 (quoting Fed.R.Civ.P. 26(b)(1)). Plaintiffs in this case did not address the good cause requirement. Nevertheless, this requirement can be met by examining the case record.

■ In order to establish whether good cause exists, the court must consider whether: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R.Civ.P. 26(b)(2)(C); *See W.E. Aubuchon Co. v. BeneFirst, LLC,* 245 F.R.D. 38, 43 (D.Mass.2007). Based on the record good cause exists to authorize plaintiffs' request. First, the information sought by plaintiffs was requested in a timely manner. Second, it does not appear that the information requested is cumulative or duplicative. Third, the information requested may help to re-

solve the issues that are present in this case. The court however must determine whether the information requested by plaintiffs is relevant to the subject matter of the action. The co-defendant argues that plaintiffs are the ones who have the initial burden of establishing the relevance of the information requested. (Docket No. 69, at 14–15.) According to the co-defendant plaintiffs did not set forth sufficient allegations as to the relevance of the discovery requested. (*Id.* at 15, ¶ 1.) The co-defendant states that "it was with the 'Opinion and Order' issued" that it learned "that 'plaintiffs [were] seeking information about general company practices in order to demonstrate a pattern of discriminatory conduct on the part of UNICCO.'" (Docket No. 69, at 15, ¶ 1.) The co-defendant's argument is based on the district court's decision in *Díaz–Padilla v. Bristol Myers Squibb Holding Ltd. Liab.,* 2005 WL 783076 (D.P.R. Apr. 4, 2005). In *Díaz–Padilla* the court stated that there were two tests to determine which party had the burden of establishing the relevancy of the discovery request. The first of these tests is known as the "'relevancy on its face' test, whereby the burden depends on whether the discovery sought appears relevant on its face or not." *Díaz–Padilla v. Bristol Myers Squibb Holding Ltd. Liab.,* 2005 WL 783076, at *2 (citing *DirecTV, Inc. v. Puccinelli,* 224 F.R.D. 677, 684 (D.Kan. 2004)). The second test on the other hand places the initial burden on "the party seeking discovery over another's objection, no matter whether the evidence's relevance is explicit or not." *Díaz–Padilla v. Bristo Myers Squibb Holding Ltd. Liab.,* 2005 WL 783076, at *2 (citing *Caouette v. OfficeMax, Inc.,* 352 F.Supp.2d 134, 136 (D.N.H.2005)). The court in *Díaz–Padilla* chose to follow the latter approach and held the opposing party would have "to show why discovery should not be permitted" only after relevancy of the information requested had been established by the party seeking discovery. This court followed the first approach and thus held that the party resisting production was the one who initially had the burden of establishing the lack of relevancy of the information requested. *Sánchez–Medina v. UNICCO Serv. Co.,* 2009 WL 4727797, at *3 (D.P.R.

2009) (quoting *St. Paul Reinsurance Co. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 511–12 (N.D.Iowa 2000)). To do so the party has to show "that the requested documents either do not come within the broad scope of relevance defined pursuant to Fed.R.Civ.P. 26(b)(1) or else are of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Marook v. State Farm Mut. Auto. Ins. Co.*, 259 F.R.D. 388, 395 (N.D.Iowa 2009) (quoting *St. Paul Reinsurance Co. v. Commercial Fin. Corp.*, 198 F.R.D. at 511 (quoting *Burke v. N.Y. City Police Dep't*, 115 F.R.D. 220, 224 (S.D.N.Y.1987))). After reviewing the objections made by the co-defendant to some of plaintiffs' interrogatories, the court concluded that it had failed to show that the interrogatories were irrelevant or overly broad. *Sánchez–Medina v. UNICCO Serv. Co.*, 2009 WL 4727797, at *5.

The co-defendant's third argument is also without merit since the district court's decision in *Díaz–Padilla* is not controlling. Even if the court were to assume that plaintiffs were the ones who had the burden of establishing the relevance of the information requested the outcome would have been the same. Although it is true that plaintiffs never made an allegation in the "Complaint" or in the "Amended Complaint" regarding a pattern and/or practice of discrimination it does not mean that because of it they cannot seek information related to the subject matter of the case. In other words it does not matter whether or not the information requested is related in any way to the issues raised by the pleadings. What is important is determining that the information requested is relevant to the subject matter in the case.

Here, plaintiffs' claims were brought under the ADEA and Title VII. In essence plaintiffs claim that Mr. Sánchez was discriminated against by UNICCO because of his age, sex, and gender. Plaintiffs also claim that UNICCO retaliated against him for engaging in a protected activity. Plaintiffs' claims therefore deal with discrimination in the work environment. As to information requested, plaintiffs argued that it was rele-

vant because according to them relocation offers were made by UNICCO to other younger employees who had less experience and seniority than Mr. Sánchez. The court thus found that the information requested by plaintiffs was relevant because it concerned general company practices that were needed to demonstrate a pattern of discriminatory conduct on the part of UNICCO. It is clear then that the information requested by plaintiffs is relevant since it is related to the subject matter of the case.

Finally, the co-defendant argues that discovery must be temporally and geographically limited to employees within certain work units who have suffered similar treatment as Mr. Sánchez. (Docket No. 69, at 15 & 17.) Although it is correct that the information requested by plaintiffs "may be limited both geographically and temporally," it is only required when it is necessary "to avoid overly broad and unduly burdensome requests." *Briddell v. Saint Gobain Abrasives Inc.*, 233 F.R.D. 57, 60 (D.Mass.2005) (citing *Glenn v. Williams*, 209 F.R.D. 279, 281 (D.D.C.2002)). This court held that plaintiffs' request is not overly broad and does not impose an undue burden on the UNICCO. *Sánchez–Medina v. UNICCO Serv.*, 2009 WL 4727797, at *5; see *Culkin v. Pitney Bowes, Inc.*, 225 F.R.D. 69, 72 (D.Conn.2004) (citing *Hollander v. Am. Cyanamid Co.*, 895 F.2d 80, 84 (2d Cir.1990)). As stated before, the information sought by plaintiffs regarding UNICCO's general company practices is both relevant and discoverable pursuant to Federal Rule of Civil Procedure 26(b)(1) since they are seeking to establish a general pattern of discriminatory treatment. See *Mitchell v. Fishbein*, 227 F.R.D. 239, 249 (S.D.N.Y.2005); *Briddell v. Saint Gobain Abrasives Inc.*, 233 F.R.D. at 60; *Culkin v. Pitney Bowes, Inc.*, 225 F.R.D. at 71 (citing *Zahorik v. Cornell Univ.*, 98 F.R.D. 27, 31 (N.D.N.Y.1983)). Having said that if the court were to limit the geographical scope of discovery as the co-defendant's requests, the result would be that plaintiffs' theory and consequent need of proof would also be limited. See *Henderson v. Nat'l R.R. Passenger Corp.*, 113 F.R.D. 502, 507 (N.D.Ill.1986). As to imposing a time limitation to plaintiffs' discovery request, this court held in the "Opinion and

Order" that "even though plaintiffs may have not explicitly limited their request to a specific time frame, it [could] be inferred that the information sought by them was limited to the time that Mr. Sánchez was terminated from his employment." *Sánchez–Medina v. UNICCO Serv. Co.,* 2009 WL 4727797, at *5.

In sum, I am not persuaded by the arguments raised by the co-defendant in its motion for reconsideration. The co-defendant's arguments are not predicated on an intervening change in law or newly discovered evidence nor do they seek to correct a manifest error of law. The co-defendant merely requests that the court reconsider arguments already discussed in the "Opinion and Order." *See Williams v. City of Pittsburgh,* 32 F.Supp.2d 236, 238 (W.D.Pa.1998) (a motion for reconsideration is not the proper way for a party to request the court "to rethink a decision it has already made, rightly or wrongly"); *Waye v. First Citizen's Nat'l Bank,* 846 F.Supp. at 314 n. 3. Therefore, the defendant's motion is denied.

### B. Motion in Compliance with the Court's Opinion and Order

In the "Opinion and Order" plaintiffs were ordered to produce any email or communication, in their possession, from UNICCO's HR representatives which might make reference to available positions in other UNICCO accounts in the United States. *Sánchez–Medina v. UNICCO Service Co.,* 2009 WL 4727797, at *6. Plaintiffs thereafter filed a "Motion in Compliance with the Opinion and Order." (Docket No 78.) In their motion plaintiffs state that they sent to the defendant an "email correspondence between Mr. Radamés Rivera …, U[NICCO]'s employee assigned to the Unilever account, and Mr. Joseph Yozzi …, one of Unicco's top manager in the United States…." (*Id.* at 1, ¶ 1.) The email according to plaintiffs shows that "[Mr.] Rivera sent Yozzi … his resume in order to be relocated to another U[NICCO] account and/or contract in the United States…." (*Id.*) Plaintiffs also state that the email shows that Mr. Yozzi informed Mr. Rivera that the resume had been passed "to one of U[NICCO]'s directors in the United

States, and to another U[NICCO]'s Vice President in Florida." (*Id.*)

The co-defendant opposed plaintiffs' motion. (Docket No. 79.) According to the co-defendant, plaintiffs failed to comply with the court's "Opinion and Order" because the email attached to the "Motion in Compliance with the Opinion and Order" is not the email they claimed was in their possession. (*Id.* at 2, ¶ 8.) The co-defendant sustains that the email that plaintiffs claimed to have in their possession is supposed to be addressed to Mr. Rivera by a HR representative of UNICCO requesting resumes of UNICCO employees for alleged available positions in other UNICCO accounts in the United States. (*Id.* at 2–3.) However, the co-defendant contends that the email submitted by plaintiffs is a totally different document because it only shows Mr. Yozzi receiving an email from Mr. Rivera and not the resumes of other UNICCO employees. (*Id.* at 3.) The co-defendant also states that the email does not mention the positions that were available in the United States. (*Id.*)

Furthermore, according to the co-defendant Mr. Yozzi is not a Human Resources representative of UNICCO. (*Id.* at 3, ¶ 9.) The co-defendant states that contrary to what plaintiffs indicated in their "Motion in Compliance with Opinion and Order" the email that was produced does not say that Mr. Rivera sent Mr. Yozzi his resume in order to be relocated to another UNICCO account. (*Id.* at 3, ¶ 10.) The co-defendant also claims that Mr. Rivera has not worked for the company since 2007 and has not been relocated and/or employed in any other UNICCO account in the United States or in Puerto Rico. (*Id.*) The co-defendant requests the court to determine that plaintiffs have failed to comply with the "Opinion and Order" and that sanctions be imposed. (*Id.* at 3–4, ¶ 13.)

 After reviewing the email, I do not agree with the co-defendant. When determining whether or not sanctions are appropriate, the moving party has to establish "two things as conditions precedent to engaging the gears of the rule's sanction machinery: a court order must be in effect, and then must be violated…." *Ortiz–López v.*

*Sociedad Española de Auxilio Mutuo & Beneficiencia de P.R.,* 248 F.3d 29, 33 (1st Cir.2001) (quoting *R.W. Int'l Corp. v. Welch Foods, Inc.,* 937 F.2d 11, 15 (1st Cir.1991)). The first condition is met; however the co-defendant has failed to establish that plaintiffs failed to comply with the court's discovery order. The co-defendant argues that plaintiffs failed to comply with the discovery order because the email produced was flawed in four aspects: (1) it only states that Mr. Rivera's resume was sent and not of any other employee from UNICCO; (2) it does not mention available positions in the United States; (3) it was not addressed to an HR representative of UNICCO; (4) it does not state that Mr. Rivera is going to be relocated to another UNICCO account.

The court however finds there are several reasons why these flaws do not warrant that plaintiffs be sanctioned. *R.W. Int'l Corp. v. Welch Foods, Inc.,* 937 F.2d at 17 (citations omitted) ("unless the failure of discovery is absolute, or nearly so . . . sanctions are unripe"); *see United States v. One 1987 BMW 325,* 985 F.2d 655, 657 (1st Cir.1993) (citing *Media Duplication Servs., Ltd. v. HDG Software, Inc.,* 928 F.2d 1228, 1238 (1st Cir.1991) ("Considerable discretion is vested in a district judge to decide whether to impose sanctions and what form they should take.")) First, the order issued by this court was broad to some extent since plaintiffs were only required to produce documents that were in their possession making reference to available positions in other UNICCO accounts in the United States. In other words plaintiffs were not ordered to produced specific materials as the co-defendant believes. Hence, the email produced by plaintiffs did have to state that the reason why Mr. Rivera sent his resume was because he was going to be relocated nor did it have to show that besides himself resumes from other employees of UNICCO were requested. Second, although the email does not say explicitly that there are available positions in the United States it does show that at least in Mr. Rivera's case his resume was sent to a vice president in Florida. This at the very least might suggest that at that particular moment there was an available position in another UNICCO account outside of Puerto Rico. Third, it is not clear whether or not Mr.

Yozzi is a HR representative of UNICCO. Plaintiffs state that Mr. Yozzi is one of UNICCO's top managers in the United States while the co-defendant claims that he is not. However, the co-defendant failed to provide any evidence to support its claim.

As to the co-defendant's request to take into consideration plaintiffs' non compliance with the "Opinion and Order" when ruling on the motion for reconsideration, I find regardless of whether or not plaintiffs complied with the court's order, the evidence requested by plaintiffs would still be relevant. As stated before, courts have held that evidence of general patterns of discrimination treatment by an employer may be relevant even in an individual disparate treatment or age discrimination case because such evidence may help prove discriminatory animus. *See Culkin v. Pitney Bowes, Inc.,* 225 F.R.D. at 71 (quoting *Flanagan v. Travelers Ins. Co.,* 111 F.R.D. 42, 48 (W.D.N.Y.1986) (citing *Zahorik v. Cornell Univ.,* 98 F.R.D. at 31)); (citing *Lieberman v. Gant,* 630 F.2d 60, 68 (2d Cir.1980)); *Nat'l Org. for Women, Inc. (NOW), St. Paul Chapter v. Minn. Min. & Mfg. Co.,* 73 F.R.D. 467, 472 (D.Minn.1977). Therefore, the evidence requested by plaintiffs still remains relevant to the issues that are present in this case.

### III. CONCLUSION

In view of the above, the co-defendant's motion for reconsideration is hereby DENIED.