# United States Court of Appeals
## For the First Circuit

No. 07-2286

IN RE: SUBPOENA TO MICHAEL WITZEL

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, <u>U.S. District Judge</u>]

Before

Lipez and Howard, <u>Circuit Judges</u>,

and DiClerico, Jr., <u>Senior District Judge</u>.[*]

  <u>Venkat Balasubramani</u>, with whom <u>Balasubramani Law</u> was on brief for appellant.
  <u>Jonathan M. Albano</u>, with whom <u>Bingham McCutchen LLP</u>, <u>Bradley E. Abruzzi</u>, and <u>Harvard University, Office of the General Counsel</u>, were on brief for appellee.

July 7, 2008

---

[*]Of the District of New Hampshire, sitting by designation.

**DiClerico, District Judge**.  This appeal arises out of a discovery dispute in litigation pending in the Eastern District of California ("the California district court").[1]  The plaintiff in the California action, California Parents for the Equalization of Educational Materials ("CAPEEM"), subpoenaed documents from a nonparty, Professor Michael Witzel, and then moved to compel Witzel to comply with its subpoena.  CAPEEM's subpoena sought production of documents in Massachusetts and, therefore, issued from the United States District Court for the District of Massachusetts ("the Massachusetts district court").  CAPEEM's motion to compel was docketed as a separate action in the District of Massachusetts. The Massachusetts district court ruled that the information CAPEEM sought from Professor Witzel was not relevant and denied the motion to compel.  CAPEEM appeals that decision.

## I.

CAPEEM is a non-profit organization of Hindu and Indian parents living in California who are concerned about the portrayal of the Hindu religion in textbooks used in California's elementary schools.  Every six years, the California State Board of Education ("CBE") and the California State Department of Education ("Department") review textbooks and other instructional materials used in the public schools.  As part of the review process, the CBE

---

[1]CAPEEM  v. Noonan, NO. CIV. S-06-532 FCD KJM (E.D. Cal. Mar. 14, 2006).

and Department receive comments and proposed revisions from interested groups about the content of the textbooks. CAPEEM participated in the textbook review process that began in 2005.

Because of the volume of comments about Hinduism, the Department formed an ad hoc committee to address the review of Hinduism as presented in California's textbooks. The Department retained Dr. Shiva Bajpai, Professor Emeritus in History at California State University, Northridge, to serve as a "Content Review Panel Expert" on Hinduism. The Department required that Bajpai not have any affiliation with groups that submitted comments for the review process and not have published with any of the textbook publishing companies for three years prior to the review process. In October of 2005, the ad hoc committee and Bajpai submitted recommendations to the Curriculum Commission for revisions of those parts of the textbooks that pertained to Hinduism. The Curriculum Commission accepted the recommendations and submitted them to the CBE for final approval.

Dr. Michael Witzel, Wales Professor of Sanskrit at Harvard University, received two emails in early November of 2005 about the textbook review process in California. An Indian graduate student who used the pseudonym "Arun Vajpayee" wrote that he had been approached to sign a petition in favor of revising California's textbooks to reflect "Hindutva" ideas about India's history, which he described as portraying ancient Indian

-3-

civilization as indigenous and without discussion of an Indo-Aryan migration.[2] Vajpayee objected to Hindutva influence and asked Witzel to contact the CBE to oppose the proposed changes. The second email was forwarded to Witzel by a former professor, Steven Farmer, and purported to be from an editor employed by a textbook publishing company whose books were recommended by the CBE. The editor wrote as a private individual and expressed concerns about the proposed revisions pertaining to Indian history.

Witzel was familiar with the Hindutva academic and political debate in India and knew that a conflict also existed in India about revising textbooks. He opposed Hindutva revisions, and his opposition to Hindutva was known to Hindu groups, including CAPEEM members. Until he received the two emails in early November of 2005, Witzel was unaware of the California textbook review process.

In response to the emails, Witzel wrote to Ruth Green, President of the CBE, to express his opposition to the proposed textbook revisions, which he stated were due to "current Indian politics and the cultural perceptions of a vocal minority." The next day, November 8, 2005, Witzel sent another letter to Green and members of the CBE, with a list of more than forty concurring

---

[2]Witzel submits a United States Department of State report on India, "International Religious Freedom Report 2006," that discusses the religious controversy in India and defines "Hindutva" as "the ideology that espouses politicized inculcation of Hindu religious and cultural norms above other religious norms."

-4-

academics, scholars, and historians, again opposing the proposed textbook revisions. He concluded his letter by stating: "the proposed textbook changes are unscholarly, are politically and religiously motivated, have already been rejected by India's national educational authorities, and will lead without fail to an international educational scandal if they are accepted by California's State Board of Education."

On November 9, 2005, Green read Witzel's November 8 letter aloud at a CBE meeting. A week later, the CBE asked Witzel, along with Stanley Wolpert, a professor at the University of California at Los Angeles, and James Heitzman, a professor at the University of California at Davis, to assist in the textbook review process. Witzel offered to assist the CBE as an academic advisor without compensation.[3] Witzel was not required to satisfy the conditions that were imposed on Bajpai when the CBE retained Bajpai to serve as a "Content Review Panel Expert."

Witzel, Wolpert, and Heitzman reviewed the disputed portions of the textbooks and provided their opinions to the Department on November 22, 2005. On the same day, the Department made new recommendations to the CBE that endorsed some of the revisions suggested by Bajpai and suggested changes to others. In December, the Curriculum Commission recommended the revisions that

---

[3]Witzel did accept reimbursement of his travel costs to attend a CBE meeting in California in January of 2006.

were originally submitted by Bajpai. Witzel and Bajpai debated textbook revision issues at a CBE meeting on January 6, 2006.

From December of 2005 through March of 2006, Witzel received threatening and harassing email related to the California textbook revision issue. In addition, the president and provost of Harvard received letters denigrating Witzel and his participation in the textbook process.

On January 12, 2006, the CBE created a new subcommittee to address the Hindu revisions. The CBE held a public hearing on the proposed revisions from March 8 through March 10, 2006. The CBE then issued its final decision on the revisions and approved the textbooks. CAPEEM was dissatisfied with the textbooks' final form.

CAPEEM filed suit in the California district court on March 14, 2006, seeking an injunction to prohibit the CBE, Department, and named members of the CBE and Department from actions alleged to be in violation of the Equal Protection Clause of the Fourteenth Amendment and the Establishment, Free Association, and Free Speech Clauses of the First Amendment. The California district court dismissed the claims against the CBE and the Department as barred by the Eleventh Amendment but denied the motion to dismiss as to individual members. In response, CAPEEM

filed a second amended complaint naming as defendants members of the CBE and the Department in their official capacities.[4]

On November 28, 2006, CAPEEM issued a subpoena to Witzel in Massachusetts commanding him to produce documents pertaining to his communications with "any Publisher"; the Department or the CBE; signatories of the November 8, 2005, letter; Wolpert, Heitzman, Bajpai, and Farmer about the textbook review process; any third party about the textbook review process; Roger Pearson or anyone else associated with the Journal of Indo-European Studies; Arun Vajpayee or about him; and Harvard University about the textbook review process. The subpoena also sought copies "of the Postings to the Indo-Eurasian Research List," any communication transmitting to Witzel the edits or revisions submitted by the "Hindu Groups" during the textbook review process, communications about the purpose of the Indo-Eurasian Research List, and content of a cited web page. Witzel provided much of the discovery CAPEEM sought, which included his communications with the CBE, the Department, and their officials; his communications with publishers who were being considered for the California textbooks; his non-confidential

_____

[4]Specifically, the parties named by CAPEEM in its second amended complaint in the California suit are (1) the following members of the CBE: Kenneth Noonan, Ruth Bloom, Alan Bersin, Yvonne Chan, Donald G. Fisher, Ruth E. Green, Joe Nuñez, and Johnathan Williams; and (2) two members of the Department: Tom Adams, Director of the Curriculum Frameworks and Instructional Resources Division, and David Lopez, Executive Director of the Curriculum Commission.

communications with his colleagues who signed the letter he sent to the CBE; and his communications with the media. He refused to provide certain communications with third parties not involved in the California case, including communications with Wolpert, Heitzman, and other colleagues and academics, and information identifying the two people who emailed him about their concerns with the textbook revision process.

CAPEEM filed a motion in Massachusetts district court to compel Witzel to comply with the subpoena. Witzel moved for a protective order. A hearing was held on both motions on July 3, 2007. The only documents in dispute for purposes of the motion to compel were Witzel's communications with nonparties that were unknown to the defendants in the California litigation. Although CAPEEM suggested that the defendants might have had some knowledge of some of the disputed communications, the Massachusetts district court pointed out that CAPEEM had made no showing of such knowledge. The court focused on what relevance Witzel's communications with nonparties that were unknown to the defendants in the California case would have in that case.

After a thorough discussion of the relevance of the disputed communications, the court stated: "Well, I've tried to tease out, as best I can, theories that might arguably justify further discovery here beyond that which has been provided by respondent and I can find none that I'm prepared to enforce by a

Motion to Compel." The court concluded that the focus of the underlying case was "on the defendants, what they knew and what they did--knowing what they knew--not on the further radiations and association that Professor Witzel may have had undisclosed to the defendants." The court granted Witzel's motion for a protective order and denied CAPEEM's motion to compel because it sought documents and communications that were not relevant and, therefore, not discoverable. CAPEEM appeals that ruling.

## II.

CAPEEM contends that the Massachusetts district court erred in denying its motion to compel Witzel to produce the disputed communications sought in the document subpoena. Witzel argues that the Massachusetts district court's decision is correct and also argues that the First Amendment protects his communications with his colleagues and others about their views on the issues raised in the textbook review process. For the reasons that follow, we affirm the court's decision denying CAPEEM's motion to compel.

"Discovery orders ordinarily are reviewed for abuse of discretion." Cusumano v. Microsoft Corp., 162 F.3d 708, 713 (1st Cir. 1998). Under that standard, "we may reverse a district court 'only upon a clear showing of manifest injustice, that is, where the lower court's discovery order was plainly wrong and resulted in substantial prejudice to the aggrieved party.'" Saldana-Sanchez v.

Lopez-Gerena, 256 F.3d 1, 8 (1st Cir. 2001) (quoting Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 244 F.3d 189, 192 (1st Cir. 2001)). A decision may be plainly wrong if it is based on an incorrect legal standard or a misapplication of the law. Id. The abuse of discretion standard for reviewing discovery orders sets a high hurdle for appellants to overcome. In re Pub. Offering PLE Antitrust Litig., 427 F.3d 49, 52 (1st Cir. 2005).

A.  Disputed Discovery

The Massachusetts district court ruled that the disputed discovery, communications between Witzel and other non-parties that the defendants did not know of or learn about, was not discoverable because it is not relevant to CAPEEM's claims. CAPEEM contends that the Massachusetts district court applied an erroneously narrow relevance standard, conflated relevance with admissibility, and improperly foreclosed discovery of circumstantial evidence.

1.  Relevance

Relying on Klonoski v. Mahlab, 156 F.3d 255, 267 (1st Cir. 1998), CAPEEM argues that the Massachusetts district court applied an overly narrow relevance standard. In doing so, however, CAPEEM ignores the intervening change in Federal Rule of Civil Procedure 26(b)(1). In 2000, Rule 26(b)(1) was amended to distinguish between discovery regarding matters that are relevant to a party's claim or defense and discovery of a broader scope encompassing "any matter relevant to the subject matter involved in

-10-

the action." Fed. R. Civ. P. 26, Advisory Committee Notes, 2000 Amendment. The purpose of the change was "to involve the court more actively in regulating the breadth of sweeping or contentious discovery." Id. Therefore, when an objection arises as to the relevance of discovery, "the court would become involved to determine whether the discovery is relevant to the claims or defenses and, if not, whether good cause exists for authorizing it, so long as it is relevant to the subject matter of the action." Id.; see also In re Sealed Case (Med. Records), 381 F.3d 1205, 1215 n.11 (D.C. Cir. 2004).

As amended, Rule 26(b)(1) allows discovery of "any nonprivileged matter that is relevant to any party's claim or defense."[5] A party seeking broader discovery "of any matter relevant to the subject matter involved in the action," is required to show good cause to support the request. Fed. R. Civ. P. 26(b)(1). CAPEEM did not address the good cause requirement to support its discovery request, and good cause is not apparent on the record. Therefore, consideration of the discovery dispute in this case is limited to those matters that are relevant to a party's claim or defense.

---

[5]The amendments to the federal rules effective December 1, 2007, made only stylistic changes to the language of Rule 26 without substantive changes. Fed. R. Civ. P. 26, advisory committee's note, 2007 amendment.

CAPEEM asserts that the disputed communications are relevant to its equal protection claim against the defendants in the underlying case in which the defendants moved to dismiss CAPEEM's equal protection claim, asserting that CAPEEM did not allege facts to support a claim of unequal treatment. The California district court denied the defendants' motion, stating: "CAPEEM specifically alleges defendants applied a less restrictive standard to Muslim, Christian and Jewish groups involved in the review process. For example, [CAPEEM] alleges that only Hindu groups were subjected to, inter alia, repeated scrutiny of proposed edits; secretive processes in making final decisions; and, hostile academic advisors." Because the California district court did not address the issue of the defendants' knowledge or intent as an element of the equal protection claim, CAPEEM asserts that the Massachusetts district court erred in linking relevance to the defendants' intent.

The Equal Protection Clause of the Fourteenth Amendment guarantees that those who are similarly situated will be treated alike. City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985). To succeed on a claim of discriminatory treatment, a plaintiff must show that the defendant acted with discriminatory intent or purpose. Washington v. Davis, 426 U.S. 229, 239-40 (1976). That is, the plaintiff must establish that the defendant intentionally treated the plaintiff differently from

-12-

others who were similarly situated. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). A discriminatory intent or purpose means that the defendants "selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group." Wayte v. United States, 470 U.S. 598, 610 (1985) (internal quotation marks omitted). Therefore, the Massachusetts district court applied the correct legal standard.

CAPEEM also contends that Witzel's communications with non-parties, who were participating in the textbook revision process, could provide evidence that Witzel influenced the edits suggested by others and that Witzel had an effect on the final editing decisions. As to Witzel's communications with non-parties who were not participating in the review process, CAPEEM argues that the evidence could show that Witzel had unprecedented access to the revision process, that Witzel and others coordinated their efforts for a particular outcome, that Witzel argued against groups he opposed, and that the defendants did not enforce their rules against Witzel. Neither Witzel nor the people with whom he was communicating are parties in the underlying action. Assuming that the disputed communications would provide evidence of Witzel's bias and that he influenced the review process in ways that other advisers could not, the communications would not show what the defendants intended in taking the actions that they did. The

defendants could not discriminate against CAPEEM based on activities or communications that were unknown to them.[6]

It appears that the parties do not dispute that the restrictions imposed on Bajpai, who was retained as a "Content Review Panel Expert," were not imposed on Witzel. The Massachusetts district court correctly stated that evidence about the defendants' restrictions or lack of restrictions on Witzel and any other alleged procedural irregularity by the defendants in the underlying case was "principally discoverable from the defendants themselves." To the extent Witzel's communications with others would show that he was not constrained by the restrictions imposed on Bajpai, such evidence would be merely cumulative of an undisputed fact.

CAPEEM also argues that Witzel's communications with other participants in the review process might shed light on the effect of his unrestricted activities on the outcome of the textbook review process. The Massachusetts district court ruled, however, that CAPEEM lacked foundation to support discovery under that theory, which it could develop through discovery from the defendants.[7] The speculative and attenuated connection CAPEEM

---

[6]CAPEEM does not allege a conspiracy to violate its rights. Cf. In re Pub. Offering, 427 F.3d at 52.

[7]On the other hand, if CAPEEM should develop a foundation for discovering the disputed communications, it could again seek that discovery from Witzel.

suggests between the defendants' alleged discrimination in imposing or not imposing restrictions on advisers and the final textbook revisions does not provide a basis to compel the discovery CAPEEM seeks here.

CAPEEM has not shown that the Massachusetts district court was plainly wrong in denying its motion to compel based on the lack of relevance of the disputed communications.

2.  Relevance versus Admissibility

CAPEEM asserts that the Massachusetts district court applied the standard for admissibility at trial instead of the relevance standard applicable to discovery.  In support of that argument, CAPEEM objects to the court's ruling that to be discoverable, the communications CAPEEM sought would have had to have been received by the defendants, participated in by the defendants, or at least known to the defendants.  CAPEEM's theory is far from clear.

Any communications about the review process that Witzel made public or disclosed to the defendants were provided to CAPEEM. The Massachusetts district court ruled that in the absence of some knowledge by the defendants of Witzel's disputed communications, they were not relevant to CAPEEM's claims and were not discoverable.  Relevance is the proper discovery standard.  In contrast, the Massachusetts district court did not conclude that the disputed communications were relevant and then go on to deny

discovery because the communications were, for example, inadmissible hearsay. The court properly focused on relevance of the disputed communications to CAPEEM's claims against the defendants in the underlying case.

### 3. Circumstantial Evidence

In similarly terse terms, CAPEEM faults the Massachusetts district court for preventing discovery of circumstantial evidence of the defendants' discrimination. CAPEEM is correct that circumstantial evidence of discrimination may be probative of an equal protection violation. See, e.g., Bennett v. Saint-Gobain Corp., 507 F.3d 23, 30 (1st Cir. 2007); Padilla-Garcia v. Rodriquez, 212 F.3d 69, 75 (1st Cir. 2000). CAPEEM offers no developed analysis, however, to show that the discovery it sought was likely to lead to circumstantial evidence of the defendants' discrimination.

### 4. Summary

CAPEEM's grounds for challenging the Massachusetts district court's decision do not provide a clear showing that the court was plainly wrong. To the extent there could be room for a difference of opinion, the Massachusetts district court properly exercised its discretion to limit the scope of the subpoena to the matters that had been disclosed to the defendants. In addition, as the court concluded, the burden on Witzel, a nonparty to the underlying action, to disclose his private communications with

-16-

other nonparties outweighs any slight relevance the disputed communications might have. See Heidelberg Ams., Inc. v. Tokyo Kikai Seisakusho, Ltd., 333 F.3d 38, 41-42 (1st Cir. 2003).

Because we conclude that the Massachusetts district court's decision was not plainly wrong, we do not address Witzel's arguments that the disputed communications are protected by privilege.

## B. Prejudice

Even if CAPEEM had shown that the Massachusetts district court's decision denying the motion to compel was plainly wrong, which it did not do, CAPEEM would still have to make a clear showing that it suffered substantial prejudice as a result of the decision. See United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 626 (1st Cir. 2001). CAPEEM, however, did not address the prejudice element of the review standard.

## III.

CAPEEM has not shown that the Massachusetts district court abused its discretion in denying the motion to compel.

**We affirm.**