# United States Court of Appeals for the Federal Circuit

---

**BARON SERVICES, INC.,**
*Plaintiff-Appellant,*

**v.**

**MEDIA WEATHER INNOVATIONS LLC,**
*Defendant-Appellee.*

---

2012-1285, -1443

---

Appeal from the United States District Court for the Northern District of Alabama in No. 11-CV-1606, Judge Inge Prytz Johnson.

---

Decided: May 7, 2013

---

JEFFREY T. KELLY, Lanier Ford Shaver & Payne, PC, of Huntsville, Alabama, argued for plaintiff-appellant. With him on the brief was J.R. BROOKS.

STUART N. BENNETT, Jones & Keller, P.C., of Denver, Colorado, argued for defendant-appellee. With him on the brief was PERRY L. GLANTZ, of Greenwood Village, Colorado.

---

Before DYK, PROST, and REYNA, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* PROST.

Dissenting opinion filed by *Circuit Judge* REYNA.

PROST, *Circuit Judge.*

Baron Services, Inc., ("Baron") appeals the orders of the United States District Court for the Northern District of Alabama awarding summary judgment of noninfringement and attorney's fees to Media Weather Innovations, LLC ("MWI"). Because the district court's summary judgment order was premature, we vacate the court's summary judgment and award of attorney's fees and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

Baron owns U.S. Patent No. 6,490,525 ("'525 patent"), which "generally relates to systems and methods for weather reporting and forecasting, and more particularly, to computerized systems and methods for reporting and forecasting real-time weather information." '525 patent col. 1 ll. 19-22. In May 2011, Baron filed a civil action alleging that MWI's WeatherCall programs infringed the '525 patent. The schedule for the case was set by the district court in an order that, among other deadlines, set discovery to end on July 13, 2012. The order did not, however, set a timetable for *Markman* proceedings or for exchanging invalidity or infringement contentions.[1]

---

[1]    Baron later informed the district court that it believed at the time that the parties would work out the deadlines for those additional terms while proceeding with fact discovery. Transcript of Summary Judgment Hearing, Jan. 24, 2012, District Court Docket Entry ("D.E.") 47 at 65-75.

About two months after filing its complaint, Baron served MWI with a request for production of the source code used by the WeatherCall products. Instead of producing the requested code, however, MWI moved the court for a protective order.[2] MWI asserted that, "[b]ecause the Patent-in-Suit claims no computer-code-based invention, MWI's computer source code is not even potentially relevant to this case." J.A. 126. In support of its motion, MWI submitted affidavits from Michael Fannin, an employee of MWI, and from Valerie Ritterbusch, the President of MWI and a former employee of Baron. Those affidavits explained that the "means" by which the accused products send information from National Weather Service ("NWS") alerts to MWI's customers is "accomplished through computer source code," but there are "numerous other terms and concepts in the 525 Patent . . . which also distinguish [MWI's] Computer Source Code . . . from the 525 Patent." J.A 138, 141. In response to MWI's motion, Baron explained that the '525 patent specifically discloses an invention that uses a special purpose computer to execute "computer code" and that the "logic" recited in several claims "IS the source code." J.A. 151-52; see '525 patent col. 5 ll. 4-5. According to Baron, MWI's source code was therefore relevant to the asserted method, apparatus, and system claims because MWI's affiants clearly established that MWI's accused products were implemented through a computer by MWI's source code.

On October 4, 2011, the district court granted MWI's motion to protect its source code from disclosure "without prejudice to [Baron]'s right to seek said information at a more appropriate time in the litigation." J.A. 166. The

---

[2] MWI's motion came after the court entered a stipulated protective order that permitted the parties to protect the confidentiality of discovery productions.

court held that it could not determine "if the source code is relevant to the issues in this action" because Baron "failed to plead in what manner [MWI] is alleged to be infringing." J.A. 164.

After the court's decision, the parties continued to proceed with discovery. Relevant here, Baron noticed depositions of Ritterbusch and Fannin,[3] and MWI served Baron with numerous written discovery requests. Included among those requests were demands for Baron to define certain terms in the '525 patent and to detail how MWI's products used or incorporated the invention claimed in the '525 patent.

On the day Baron's responses to MWI's discovery requests were due, November 21, 2011, Baron moved the district court to "improve the efficiency and orderliness of th[e] case" by setting a *Markman* hearing and adopting the Patent Rules that were in use by another judge in the Northern District of Alabama. J.A. 172. With its motion, Baron included a proposed schedule detailing a timetable for disclosures and joint filings relating to infringement contentions, validity contentions, and *Markman* proceedings. In addition, Baron moved the court to enter "an order staying Baron's obligations to respond to certain of MWI's Discovery Requests, as explicitly set forth in the Patent Rules, until the applicable dates set forth in [Baron's proposed schedule]." J.A. 174.

On the same day Baron filed its motion, it served timely responses to MWI's written discovery requests. In

---

[3]    Although noticed on November 1, 2011, MWI appears to have not agreed to move forward with the depositions until January 7, 2012. *See* D.E. 38-5 at 2; 40-7 at 3. It appears from the record that those depositions were scheduled to take place in mid-February 2012. D.E. 40-7 at 1.

those answers, Baron objected to defining claim terms as premature in light of the schedule that Baron proposed for the court to adopt.[4]  As promised in those responses, Baron subsequently served its "Disclosure of Asserted Claims and Preliminary Infringement Contentions" on December 8, 2011.  Those contentions detailed how Baron believed MWI's products met the limitations of each asserted claim.  Baron then renewed its request to MWI for access to source code.

On December 27, 2011, MWI filed a motion for summary judgment of noninfringement.  MWI argued that undisputed facts proved that it did not infringe the '525 patent.  According to MWI, "[t]he only service that MWI offers its subscribers is to forward National Weather Service warnings," "Baron admits that warnings issued by the National Weather Service do not infringe any claim of the '525 Patent," and "Baron has therefore admitted that MWI's services do not infringe any claim of the '525 Patent."  J.A. 470-71.  In support of its motion, MWI submitted a new affidavit by Valerie Ritterbusch in which she explained why the accused products did not satisfy the limitations of the asserted claims given her understanding of certain claim terms in the '525 patent.

Baron filed a timely response to MWI's motion for summary judgment and provided the district court with several documents produced by MWI during discovery.  Citing Federal Rule of Civil Procedure 56(d), Baron ar-

---

[4]    Baron also included the following response to one *of MWI's* requests for admission.  "Baron is without sufficient information to know how the Court will define, if appropriate, 'storm profile' or 'National Weather Service warning' . . . .  Baron admits that information from the National Weather Service alone, including a 'warning', does not infringe the '525 Patent."  J.A. 380.

gued that summary judgment was premature because the court had not yet construed the terms of the '525 patent, because it had not yet had the opportunity to review MWI's relevant source code, and because it had yet to depose Ritterbusch and Fannin. Pointing to a provisional patent application filed by MWI for the accused products, Baron also argued that there was a genuine dispute concerning the material fact whether the accused products "analyzed" weather data from the NWS. According to Baron, the description of MWI's WeatherCall programs in the provisional application contradicted the statements in the affidavits submitted by MWI.

After responding to MWI's motion for summary judgment, Baron filed a motion to compel production of MWI's source code. Baron asserted its infringement contentions clearly demonstrated the relevancy of the code, but MWI continued to refuse repeated requests to produce it. Without the source code, Baron argued, "[it] and the Court will simply have to rely on MWI's word as to how its products function without any ability to test, through expert review of the source code, whether MWI's statements are accurate or inaccurate." J.A. 755.

On January 24, 2012, the court held a hearing to address MWI's summary judgment motion and Baron's outstanding motions. At the hearing, Baron reiterated its argument that summary judgment was premature and unwarranted. Baron discussed the details of the MWI's provisional patent application, including how it believed the document revealed that MWI's WeatherCall products analyze "the [NWS] alert type, time of the alert, and the geographic area affected by the alert . . . in the same way that is taught by the patent." D.E. 47 at 19. Baron also explained how an infringement analysis would turn on the construction of key terms in the asserted claims: "[MWI] say[s] in their response, well, we don't use a geographic area, but they say right here [in its provisional patent application] that they do use a geographic area,"

*id.*; "this [provisional patent application] says that their product is analyzed by the system, . . . they said that the word 'analysis' here doesn't mean the same as the word 'analysis' in our patent," *id.* at 16; "[t]hey say [an alert]'s not meteorological data[,] I don't know how you say a weather alert is not meteorological data," *id.* at 15.

At the hearing, Baron also summarized its argument why summary judgment was premature.

> [T]he documents . . . have shown . . . that MWI engages in significant processing and analysis of the data contained in the [National Weather Service] warnings . . . . [W]e concede just getting information from the National Weather Service and just passing it along without analysis, without manipulation, without doing any of the things that they say they do . . . would not be an infringement of the patent. But they say they do these other things. . . . [T]he affidavit conflicts with it . . . . That being the case, . . . we should have an opportunity to test what is in the affidavit and before the Court grants summary judgment.

*Id.* 23. Baron specifically highlighted the importance of MWI's source code to its opposition to summary judgment.

> There's a source code out there that tells what they do. . . . [W]hat is said in the affidavit is in conflict with what is said right here in [the provisional patent application] . . . [a]nd it is also not tested by us in order to determine whether it's exactly correct or not, and we have asked to do that. In order to be able to compare the product or service to the properly construed claims, that's what we asked the Court for an opportunity to do.

*Id.* at 20. The district court, however, looked to the briefing and affidavits filed by MWI and summarized Baron's

argument as: "I don't believe what they say; I want to go in and dig deeper and see if they are lying." *Id.* at 17.

Throughout the hearing, MWI's arguments also centered on disputed claim terms and the relevancy of the source code. "[W]e have a source code that enables us to analyze—and I will use that term 'analyze'—to reach the geographic latitudes and longitudes of a NWS warning and then compare that polygon with addresses that we have for our subscribers." *Id.* at 36. "[W]e find out the type of alert, we find out the time, and we find out the geographical area. That's what we mean by analyze." *Id.* at 51. But "we do it arithmetically. There's nothing special about it. We do it by virtue of math. That's why our source code is irrelevant." *Id.* at 43-44. And, as it stated, MWI did not infringe because "the patent claims that it has a logic . . . designed to do one thing and one thing only, and that's to determine . . . whether a contact [sic] identifier identifies a remote unit that is located within the area of a weather alert."[5] *Id.* at 36. "[Our system] doesn't have a logic to do that." *Id.* at 38.

On February 1, 2012, the court granted MWI's motion for summary judgment of noninfringement and found Baron's outstanding motions to be moot. Disposing of Baron's petition under Rule 56(d), the court found that Baron never "ask[ed] for more time to complete discovery" and failed to "assert it could not prosecute this action without further discovery." J.A. 29. Accordingly, "left

---

[5]    The dissent appears to adopt that view of how infringement of the asserted claims must be determined. Dissent at 3. It finds relevant—as does MWI—that users of MWI's systems provide a "self-designated location" for weather alerts. *Id.* Without proper claim construction, however, it seems difficult to know whether that distinction is important.

solely with [MWI]'s affidavit evidence," the court concluded that Baron's opposition to summary judgment consisted only of asserting that MWI "is lying." J.A. 15, 28. In the court's view, MWI had therefore "submitted unrefuted evidence that its service does not perform numerous steps of the plaintiff's patent," namely, MWI's evidence demonstrated that "it does not use a geographical area, region, cell, or grid to determine areas to be altered." J.A. 28.

After reaching its conclusion on infringement, the court held that claim construction was unnecessary, even though Baron "obstinately insisted" otherwise. Its "duty," as the court saw it, was "to construe only *disputed* claim terms." J.A. 32. The court reasoned that Baron did "not dispute the meaning of any terms" because it had "refused" to "define a variety of terms through discovery" requested by MWI. J.A. 30-31. Therefore, despite the parties' differing positions on the definition of several terms in the asserted claims and Baron's motion for a *Markman* hearing, the court declined to construe any terms during its infringement analysis.

Shortly after prevailing on summary judgment, MWI filed a motion for attorney's fees pursuant to 35 U.S.C. § 285, which the court also granted. In April 2012, the court entered judgment awarding MWI $243,757.45 for attorney's fees.

Baron timely appealed the grant of summary judgment of noninfringement and the award of legal fees. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1295(a)(1).

## II. DISCUSSION

Under Federal Rule of Civil Procedure 56(d), a party opposing a summary judgment motion may request that a district court delay ruling on the motion in order to obtain additional discovery without which "it cannot present facts essential to justify its opposition." Fed. R. Civ. P.

56(d).[6]   The Eleventh Circuit has explained that "[t]he whole purpose of discovery in a case in which a motion for summary judgment is filed is to give the opposing party an opportunity to discover as many facts as are available and he considers essential to enable him to determine whether he can honestly file opposing affidavits." *Snook v. Trust Co. of Ga. Bank of Savannah, N.A.*, 859 F.2d 865, 870 (11th Cir. 1988) (quoting *Parrish v. Bd. of Com'rs of Ala. State Bar*, 533 F.2d 942, 948 (5th Cir. 1976)).   Accordingly, district courts in the Eleventh Circuit should grant requests under Rule 56(d) "when the party opposing the [summary judgment] motion has been unable to obtain responses to his discovery requests" and the discovery sought would be essential to opposing summary judgment and "relevant to the issues presented by the motion for summary judgment." *Snook*, 859 F.2d at 870 (citation omitted); *see Porter v. Ray*, 461 F.3d 1315, 1324 (11th Cir. 2006).

Here, Baron requested that the district court delay ruling on MWI's summary judgment motion until it had to the opportunity to examine MWI's source code and to depose Ritterbusch and Fannin.[7]   It adequately explained

---

[6]   We apply the law of the regional circuit when reviewing the court's decision under Rule 56(d).   *Exigent Tech., Inc. v. Atrana Solutions, Inc.*, 442 F.3d 1301, 1310 (Fed. Cir. 2006).   In the Eleventh Circuit, a district court's denial of such a request may be overturned if the decision was an abuse of discretion.   *Carmical v. Bell Helicopter Textron, Inc.,* 117 F.3d 490, 493 (11th Cir. 1997).

[7]   The dissent correctly notes that we do not reach whether summary judgment was "supported by the record evidence."   Dissent at 6.   That is not because, as the dissent contends, we are trying to present "a highly selective, one-sided perspective of the record."   *Id.*   That is inaccurate.   We simply decline to repeat the error of the

how that additional discovery was relevant and essential for its opposition to MWI's summary judgment motion.[8] Baron detailed in its briefs to the district court and during the summary judgment hearing how MWI's source code could show that the accused devices met several of the limitations of the asserted claims. As shown in its infringement contentions, Baron asserted that certain features of the accused products met the "logic," "analyze," and "computer" limitations found in some of the asserted claims. Per the Ritterbusch and Fannin affidavits, those features are enabled by MWI's source code.[9] MWI assert-

district court by prematurely considering whether the incomplete record supports summary judgment.

[8] Baron did not file the affidavit normally required by Rule 56(d). However, an affidavit or declaration is not required in the Eleventh Circuit. *Snook*, 859 F.3d at 871 ("In this Circuit, a party opposing a motion for summary judgment need not file an affidavit pursuant to Rule 56([d]) . . . in order to invoke the protection of that Rule.").

[9] The dissent states that Baron has no "entitlement to th[e] discovery" of source code because it failed to "demonstrate good cause as to why the source code was relevant to the alleged infringement." Dissent at 9. But "good cause" is required to be shown under Rule 26(b)(1) only if seeking broad discovery of "matter[s] relevant to the *subject matter* involved in the action." Fed. R. Civ. P. 26(b)(1) (emphasis added); *see, e.g.*, Fed. R. Civ. P. 26, Advisory Committee Notes, 2000 Amendment; *In re Subpoena to Witzel*, 531 F.3d 113, 118 (1st Cir. 2008). Baron seeks discovery of the source code as relevant to its *claims*; Baron's burden under Rule 26(b)(1) is not good cause. It only has to show that the source code is relevant and likely to lead to admissible evidence—which it has clearly demonstrated. *See id.* Under the agreed protective order, MWI can require that only Baron's attorneys

ed, though, that those features are not enabled by the source code in an infringing manner. Examining the source code would have enabled Baron to determine if MWI's noninfringement position was correct—which Baron believed to not be the case given the disclosures in the provisional patent application produced by MWI regarding how the accused products might analyze data from NWS warnings with logic implemented on a computer. The opportunity for the reasonable chance to disprove MWI's position on noninfringement was relevant and essential to Baron's opposition of MWI's motion for summary judgment.[10]

Baron's opportunity to depose Ritterbusch and Fannin was equally important to Baron's ability to adequately oppose summary judgment. As demonstrated by their affidavits, Ritterbusch and Fannin both possessed personal knowledge of the functionality of the accused products. Their affidavits were MWI's primary evidence to support its motion for summary judgment, and the statements made in them were accepted as true by the district

have access to the code. There is no basis to further withhold the discovery of the source code.

[10] MWI asserts that its source code was not essential—or even relevant—to show infringement because the outputs of MWI's accused products, to which Baron had ready access, were enough to definitively prove that MWI did not infringe the '525 patent. We have no doubt that the output of a system may prove noninfringement in some cases. But MWI fails to show how the output of MWI's WeatherCall programs alone proves that the accused products lack an essential limitation in each and every asserted claim of the '525 patent. And MWI does not explain how it would make that showing without construction of several key terms in the asserted claims.

court. Deposing Ritterbusch and Fannin would have provided Baron its principal opportunity to directly challenge the veracity of the statements made in their affidavits.

Therefore, under the circumstances here, it was improper for the district court to have refused Baron's request to delay ruling on MWI's summary judgment motion until Baron had the opportunity to access MWI's source code and depose Ritterbusch and Fannin. *See Metro. Life Ins. Co. v. Bancorp Servs., L.L.C.*, 527 F.3d 1330, 1338 (Fed. Cir. 2008) (reversing district court refusal to grant Rule 56(d) motion when discovery sought was the principal opportunity to contradict statements in declarations that a district court treated as truthful and dispositive); *see also Wideman v. Shallowford Cmty. Hosp., Inc.*, 826 F.2d 1030, 1037 n.11 (11th Cir. 1987) ("[T]he proceedings in the district court took a bizarre turn when the court accepted the affidavits . . . in support of the defendants' motion for summary judgment, yet refused to permit the plaintiffs to depose those same individuals. This is not a proper practice."); *cf. Exigent Tech. v. Atrana Solutions*, 442 F.3d 1301 (Fed. Cir. 2006) (applying Eleventh Circuit law and affirming a denial of a Rule 56(d) motion because it was made after the close of discovery and after the plaintiff had already obtained two extensions of time to respond to a summary judgment motion). We do not agree with the district court that Baron "[a]t no point . . . assert[ed] it could not prosecute this action without further discovery" and "did not ask for more time to complete discovery." J.A. 29 n.15. In its brief in opposition to summary judgment and at the summary judgment hearing, Baron informed the district court that summary judgment would be premature under Rule 56(d) because it had yet to obtain MWI's source code and to depose Ritterbusch and Fannin. Baron also appears to have diligently pursued that discovery. It made repeated requests to MWI for the source code and resorted

to motions practice when the parties were at an impasse. And it noticed depositions of Ritterbusch and Fannin almost two months before MWI filed its motion for summary judgment—depositions that it appears would have occurred except for the district court's summary judgment ruling.[11]  The district court abused its discretion by denying Baron's request under Rule 56(d) to delay ruling on MWI's summary judgment motion.[12]

## III. CONCLUSION

The district court prematurely granted summary judgment of noninfringement to MWI.  We therefore vacate the district court's summary judgment order, including its dismissal of Baron's outstanding motions as moot, and the district court's order and judgment awarding attorney's fees to MWI.  We remand this case to the district court for further proceedings consistent with this

---

[11]   The dissent claims that Baron should not be afforded the opportunity to depose Ritterbusch and Fannin because it made a "strategic choice" to delay those depositions until after the summary judgment hearing.  Dissent at 10.  Baron noticed those depositions months before summary judgment briefing started.  MWI finally offered Ritterbusch and Fannin the same day summary judgment briefing concluded and with notice of only a few business days.  There was no "strategic choice" by Baron to reschedule the depositions for a later date (that still fell months before the close of discovery) because of "the short notice and other scheduling conflicts."  D.E. 40-7 at 2.

[12]   The dissent asserts that there is no cause to permit additional discovery because Baron should have sought "protective relief from the court" to enable it to take discovery before summary judgment.  Dissent at 10.  But the dissent ignores the relief Baron sought that is the very subject of our opinion: Baron's Rule 56(d) request.

opinion. In remanding for further proceedings, we express no opinion as to whether Baron has a meritorious cause of action; after claim construction and further discovery, it may be that the cause of action is nonmeritorious. But Baron is entitled to the opportunity to prove otherwise under a correct claim construction with appropriately limited discovery.[13]

---

[13] Baron argues that it also produced adequate evidence of infringement to survive summary judgment. Given our holding, we need not reach the merits of the district court's ruling on infringement. However, on remand, we note that the district court should not avoid construing relevant terms in the asserted claims as part of its infringement analysis. A determination of patent infringement, even on summary judgment, requires a two-step analysis, the first of which is claim construction. *Cybor Corp. v. FAS Techs., Inc.,* 138 F.3d 1448, 1454 (Fed. Cir. 1998) (en banc).

The importance of claim construction is quite evident here. The infringement analysis in this case may very well turn on the definition and scope of terms in the asserted claims. As made clear during the summary judgment hearing, the parties dispute the scope of many claim terms and rely on their own understandings of those terms to support their infringement or noninfringement theories. And they also look to seemingly conflicting intrinsic and extrinsic evidence to support their interpretations of relevant claim terms. Claim construction would resolve the disputes between the parties and provide the legal basis for determining infringement.

In addition, after construing the terms of the asserted claims, the court can then also properly decide the relevance of whatever admissions related to noninfringement

**VACATED AND REMANDED**

COSTS

Each party shall bear their own costs.

---

that Baron may have made during discovery or during the summary judgment hearing. Without construing relevant claim terms, however, the import of those statements—and the propriety of the parties' positions on infringement—cannot be reasonably determined with an appropriate level of clarity.

This guidance is not an "appellate pronouncement[] on case management," as the dissent sees it. Dissent at 9. It is merely recognition that the facts of this case demonstrate the necessity of construing claim terms as part of the infringement analysis.

# United States Court of Appeals for the Federal Circuit

**BARON SERVICES, INC.,**
*Plaintiff-Appellant,*

v.

**MEDIA WEATHER INNOVATIONS LLC,**
*Defendant-Appellee.*

2012-1285, -1443

Appeal from the United States District Court for the Northern District of Alabama in No. 11-CV-1606, Judge Inge Prytz Johnson.

REYNA, *Circuit Judge,* dissenting.

This case presents the question of at what point should the case management perspectives of a party trump an otherwise properly entered summary judgment? The majority takes the unusual course of vacating a summary judgment determination that is supported by the record evidence based on the premise that the district court failed to manage procedure and discovery in accordance with Baron Services, Inc.'s ("Baron") case management expectations which the district court held to be unreasonable and obstructive. I find that the district court's case management was not an abuse of discretion,

and that the record evidence supports the entry of summary judgment. I respectfully dissent.

BACKGROUND

Baron accuses Media Weather Innovations, LLC ("MWI") of infringing U.S. Patent No. 6,490,525 ("the '525 Patent") by transmitting National Weather Service ("NWS") warnings. The written description of the '525 Patent discloses a computer-based system that, after compiling meteorological data, may predict the path of a storm, '525 Patent col. 3 ll. 39-41, use the data to generate storm profiles, *id*. at col. 4 ll. 57-59, and perform "storm tracking functions." '525 Patent col. 6 ll. 24-27, 64-65. The end result, at least as envisioned in the preferred embodiment, is that the generated storm profiles are "distributed to the respective remote units by the distribution network" so that an end user receives "site-specific" and "highly relevant" weather information. '525 Patent col. 4, ll. 59-65.

The asserted claims are drawn to "logic" configured to manipulate weather data and make determinations relating to weather events. The logic is also configured to transmit such weather-related determinations to a user in a geographic region experiencing the impending weather event. Claim 1 recites:

1. A system for providing weather event notifications, comprising:

memory for storing contact identifiers that identify a plurality of remote units; and

*logic configured to make a determination* as to whether one of said contact identifiers identifies at least one of the said remote units that is located within a geographic region of an impending weather event, said logic *further configured to transmit*, if said logic determines in said

> determination that said one contact iden-
> tifier identifies a remote unit located with-
> in said geographic region, a signal to the
> at least one remote unit based on said one
> contact identifier thereby enabling the at
> least one remote unit to notify a user with-
> in said geographic region of said impend-
> ing weather event.

'525 Patent col. 10 ll. 33-47 (emphases added).  Based on the plain language of the representative claim, it cannot be infringed unless an accused system compiles data and determines, based on the user's location, where to send the corresponding warning.  The issue before the district court was whether MWI's dissemination of unmanipulated NWS warnings, to a user at a self-designated location,[1] infringes the '525 Patent.

## SUMMARY JUDGMENT

The dispositive summary judgment rationale—that MWI's products do not infringe because they merely download publicly available NWS notifications and forward the notifications to subscribers—is based on Baron's admissions and statements concerning what constitutes

---

[1] MWI distributes NWS warnings only to those users who opt-in through MWI's WeatherCall products. This distinction is important in understanding a core difference between Baron's commercial embodiment of its patent and the accused products.  Whereas the Baron Saf-T-Net system analyzes where to send NWS warnings based on Internet digital addressing and whether a customer's phone number is inside or outside the area affected by the weather alert, see J.A. 556–57, the MWI accused products forward the NWS warnings based solely on geographic information the user provides in opting-in and requesting MWI's weather alerts.  J.A. 491–92.

infringing activity.  *See* J.A. 22; J.A. 1034.   First in its written discovery responses, and later at oral argument, Baron defined the parameters of noninfringement: "[W]e concede just getting information from the National Weather Service and just passing it along without manipulation . . . would not be an infringement of the patent." J.A. 1034; *see also* J.A. 380.  The district court noted that "Baron admits that information from the National Weather Service alone, including a 'warning', [sic] does not infringe the '525 Patent."  J.A. 23, n.9 (quoting J.A. 380) (emphasis in original omitted).

In moving for summary judgment, MWI argued that its straightforward dissemination of weather information—without analysis or manipulation—could not satisfy the specific logic requirements of the asserted claims and fell squarely within Baron's parameters of noninfringement.  To support its position, MWI adduced evidence, including sworn declarations of corporate representatives, J.A. 138−39; J.A. 141−43; J.A. 491−92, copies of the alerts MWI disseminated to subscribers, J.A. 1058, and a proposal in the MWI provisional patent application describing preferred embodiments as delivering NWS warning without meteorological analysis or forecasting. *See* J.A. 626−27.  The witness declarations provided a particularized comparison between operation of the accused products and the limitations in the claims.  Mr. Michael Fannin, developer of the accused products, explained that the computer source code does not analyze meteorological data as claimed in the '525 Patent.  J.A. 138.   Similarly, Ms. Valerie Ritterbusch, President of MWI, provided two declarations clarifying that there is no analysis of data, *id.* at 142, and confirmed that the accused products transmit NWS warnings without engaging in any sort of weather event prediction.  *Id.* at 492.

Relying primarily on the witness declarations, the district court granted summary judgment because the MWI "does not use a geographical area, region, cell or grid to

determine areas to be alerted." J.A. 28. In particular, the district court cited to Baron's admission in the written discovery response, and then evaluated the sworn statement of Ms. Ritterbusch stating that MWI "only transmit[s] National Weather Service warnings to members of the public who subscribe to MWI's services." J.A. 24 (quoting J.A. 491). After pointing out that Baron had not presented any evidence of infringement, by affidavit or otherwise, the district court concluded that MWI's unrefuted showing established that it merely passes on alerts and such basic activities could not, as a matter of law, perform the numerous steps recited in the asserted claims. *See id.* at 28−29 (citing Ritterbusch declaration).

In light of this body of evidence, I would affirm the district court's summary judgment ruling—a ruling that isolated and disposed of unsupported infringement claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose."); *see also Minkin v. Gibbons, P.C.*, 680 F.3d 1341, 1351 (Fed. Cir. 2012). Indeed, the purpose of summary judgment is to dispose of those issues for which there is no contention as a matter of law. FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

MWI discharged its burden when it presented evidence that it met Baron's noninfringement description. Baron, having made a choice to define the bounds of noninfringing activities, did not rebut MWI's summary judgment showing. Because Baron failed to point to specific ways in which accused products were capable of analysis and/or manipulation that met the claim limitations, the district court was correct to conclude that Baron did not have a credible basis to oppose the motion for summary judgment. *Exigent Tech., Inc. v. Atrana Solutions, Inc.*, 442 F.3d 1301, 1308−09 (Fed. Cir. 2006) (ap-

plying Eleventh Circuit law and holding that summary judgment is warranted when the movant has discharged its burden and there is an absence of evidence to support the nonmoving party's case); *Optivus Tech., Inc. v. Ion Beam Applications S.A.*, 469 F.3d 978, 990 (Fed. Cir. 2006) (reaffirming the well-established summary judgment framework for shifting the burden of production).

DISCOVERY AND CLAIM CONSTRUCTION

Taken as a whole, I believe that the majority takes a highly selective, one-sided perspective of the record.[2] First, the majority neither acknowledges nor discusses Baron's voluntary narrowing of the noninfringement issue. Second, the majority ignores whether the summary judgment determination is supported by the record evidence. And, third, the majority fails to take into account Baron's tactics which the district court described as obstinate and egregious. J.A. 30; J.A. 32.

Our standard of review warrants deference to the district court's characterization of the litigation dynamics,[3]

---

[2]    *See, e.g.*, Majority Op. 2 (emphasizing that the district court did not "set a timetable for *Markman* proceedings or for exchanging invalidity or infringement contentions"); Majority Op. 8−9 (using quotation marks to underscore the district court's perceived "duty").

[3]    "Questions of trial management are quintessentially the province of the district courts." *United States v. Smith*, 452 F.3d 323, 332 (4th Cir. 2006); *see also Stuart v. Huff*, 706 F.3d 345, 350 (4th Cir. 2013) (honoring the trial court's "superior vantage point" in "exercising judgment based on [the trial court's] 'on the scene' presence") (internal citations omitted). These well settled precepts are consistent across all Circuits. *See, e.g., Outside the Box Innovations, LLC v. Travel Caddy, Inc.*, 695 F.3d 1285, 1296 (Fed. Cir. 2012) ("Deference is given to the district court's discretion in trial management 'unless the

especially where, as here, the district court recognized Baron's efforts to undermine its established procedures. The district court noted Baron's propensity to ignore court orders "in favor of its own proposed time lines and rules of procedure." *See* J.A. 33, n.16. The record bears out this observation, demonstrating a pattern of Baron comporting in a manner that suited its own convenience. For example, in response to a multitude of MWI inquiries, Baron resisted written discovery unless and until the district court adopted local patent rules and/or set a *Markman* hearing. *See, e.g.*, J.A. 174; J.A. 362−85 (declining to exchange proposed claim constructions because Baron considered such a request "premature" prior to the court setting a *Markman* timetable). The district court expressed findings on these dilatory tactics and deficient discovery responses. The written decision reflects the district court's frustration with the manner in which Baron prosecuted its case:

> [T]he plaintiff relies on its request for a hearing and the timetable offered by it *that was never adopted by the court* as a reason it does not have to respond to discovery. The plaintiff did not address the fact that the requests for admission, as well as the remainder of the discovery propounded by the defendant were all in accordance with the Scheduling Order *actually entered by this court.*

J.A. 23, n.9 (emphasis in original).

---

ruling is manifestly erroneous.'") (quoting *United States v. Frazier*, 387 F.3d 1244, 1258 (11th Cir. 2004) (en banc)); *United States v. Criden*, 648 F.2d 814, 817–18 (3d Cir. 1981) (where the trial court has a "superior vantage point" from which to resolve the question, its decision "merits a high degree of insulation for appellate revision").

Baron's efforts to dictate the trajectory of court proceedings should not have gained traction on appeal. While some districts and individual judges have elected to impose local patent rules, the district court was under no obligation to incorporate Baron's requests into the docket control order. Nor was the district court obligated to hold a *Markman* hearing prior to summary judgment,[4] as demonstrated by Baron's failure to cite authority that it was entitled to a hearing as a matter of right. This court, on previous occasions, has chastised district courts for conducting a trial without rigorous claim construction efforts. *E.g.*, *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1346 (Fed. Cir. 2002); *Graco, Inc. v. Binks Mfg. Co.*, 60 F.3d 785, 791 (Fed. Cir. 1995). These decisions are procedurally distinct from the situation presented in this case. Our prior discussions of the need for claim interpretation have not demanded that claims be construed in advance of summary judgment, and importantly, in *Allen Engineering* and *Graco* the parties did not diminish the need for the district court to construe the claims by voluntarily defining the parameters of noninfringement. Here, the district court had no need to examine the meaning of the claims in exacting detail because Baron's explicit concessions shaped the infringement

---

[4]    To the contrary, in the context of a given case, claim construction can, and does, occur solely based on the paper record. *E.g.*, *Interactive Gift Express, Inc. v. Compuserve Inc.*, 1998 WL 247485 at *1, n. 3 (S.D.N.Y. May 15, 1998) ("The Court notes at the outset that no *Markman* hearing is needed in this case because the Court does not require expert or other testimony to aid it in its claim construction."), *vacated on other grounds*, 256 F.3d 1323 (Fed. Cir. 2001); *Revlon Consumer Prods. Corp. v. Estee Lauder Co., Inc.*, 2003 WL 21751833, at *14 (S.D.N.Y. July 30, 2003) (collecting district court cases).

analysis by narrowing the scope of its claims when compared the claims with the accused products.

I believe that the district court acted reasonably by relying on Baron's statements regarding the potential noninfringing operation of the accused products, and that such reliance negated the district court's obligation to further define terms in the asserted claims. *Compare with* Majority Op. 15, n.13 (critiquing the district court's handling of claim construction in performing the infringement analysis). The majority's reasoning encroaches upon a district court's discretion to manage a case, and its critiques amount to appellate pronouncements on case management. The majority states that "[t]he importance of claim construction is quite evident here," Majority Op. 15, n.13, an assessment that indicates how the majority would have handled the case if wearing the district court's robe. But that is not the inquiry on appeal. The issue on appeal is whether the record evidence supports the entry of summary judgment and whether the district court abused its discretion in its case management decisions.

The majority also pays significant attention to Baron's claims regarding its need for MWI's source code, yet Baron has no absolute entitlement to this discovery given its failure to demonstrate good cause as to why the source code was relevant to the alleged infringement. J.A. 164−65. I find that the source code issue is but one part of Baron's litany of unsubstantiated discovery grievances that feint towards evidence that is *not in the record* to divert attention from the unrebutted evidence that *is in the record*. *E.g.*, Majority Op. 11−14.

The majority likewise errs in proclaiming, without confronting the salient facts in the record, that the district court "refused" to permit depositions of Mr. Fannin and Ms. Ritterbusch. Majority Op. 13. The actual correspondence between the parties contradicts this assertion and shows that Baron could have taken Mr. Fannin and

Ms. Ritterbusch's depositions prior to the summary judgment hearing.  J.A. 970−71.  The parties had notice as to when the summary judgment motion would be heard and once the MWI witnesses were made available it behooved Baron to secure the testimony it needed to survive summary judgment, or at minimum to seek protective relief from the court.  Instead, Baron affirmatively chose to not take depositions prior to the summary judgment hearing and to actually declare it would delay securing that testimony after the district court considered the summary judgment positions.  This was a strategic choice for which it should bear the consequences.  It is not our duty to repair a party's self-inflicted wounds.

CONCLUSION

While I agree that parties generally should be permitted to develop the record, obtain claim construction, and engage in discovery prior to consideration of summary judgment, a party should not be permitted to escape summary judgment through deliberate trial strategies. *Barfield v. Brierton*, 883 F.2d 923, 932 (11th Cir. 1989) (explaining that it is within a district court's discretion to refuse to stay consideration of a motion for summary judgment "if the district court is dissatisfied with the nonmovant's explanations as to why he cannot rebut the movant's motion for summary judgment") (citing *Wallace v. Brownell Pontiac-GMC Co., Inc.*, 703 F.2d 525, 527 (11th Cir. 1983)).  The record in this case supports the conclusion that the district court allowed discovery to run its course and after Baron made concessions regarding what constituted noninfringing activity, the district court evaluated the evidence of record and correctly found that Baron "failed to provide any evidence of specific actions, processes, or procedures of [MWI's] product that follow the steps of plaintiff's patent."  J.A. 26.  Eleventh Circuit case law confirms that the district court was correct to consider whether summary judgment was appropriate based on the record before it.  *Holloman v. Mail-Well*

*Corp.*, 443 F.3d 832, 836 (11th Cir. 2006) (appellate review of a district court's grant or denial of summary judgment considers "only the evidence that was available to the district court at the time it considered the motion") (internal citation omitted).

The majority adopted Baron's procedural perspective and was dismissive of the district court's role in setting the tone and schedule for case management and discovery disputes. In my view, the district court is endowed with broad discretion to decide the manner it will run a case. FED. R. CIV. P. 16; *Pac. Indem. Co. v. Broward County*, 465 F.2d 99, 103 (11th Cir. 1972) (noting that Rule 16 "gives the trial court broad discretion in conducting pretrial procedures in order to narrow the issues, reduce the field of fact controversy for resolution, and to simplify the mechanics of the offer and receipt of evidence"); *accord Rosario-Diaz v. Gonzalez*, 140 F.3d 312, 315 (1st Cir. 1998) ("The Civil Rules endow judges with formidable case-management authority. . . . In exercising this power, trial judges enjoy great latitude.") (internal citations omitted). Here, the record shows that the district court acted well within the bounds of reasonableness in denying Baron's case management and discovery requests. *Cf. Vivid Tech., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803−04 (Fed. Cir. 1999) (affirming a district court's decision to limit discovery as appropriate in each phase of the litigation). Because I find that the district court did not abuse its discretion and that the record supports summary judgment, I respectfully dissent.